**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

     **I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>NINTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>ORANGE</u>   COUNTY, FLORIDA

<u>Rose Marie Celestin</u>
Plaintiff

Case # _____
Judge _____

vs.
<u>City of Ocoee, Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, Town of Windermere, Griffin S Hebel</u>
Defendant

     **II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

     **III.    TYPE OF CASE**    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

Exhibit A

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☒ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.  REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.  NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   1

**VI.  IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.  HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.
    2019-CA-12661-0

**VIII.  IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Jeremy K Markman      Fla. Bar # 80594
     Attorney or party           (Bar # if attorney)

Jeremy K Markman          04/08/2021
  (type or print name)          Date

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

        Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

        Respondents.

_____/

CASE NO.:
DIVISION:

## **COMPLAINT**

Plaintiff, ROSE MARIE CELESTIN, as Next of Kin and as Proposed Personal Representative of the Estate of JEAN SAMUEL CELESTIN, deceased, by and through undersigned counsel, hereby sues Defendants, CITY OF OCOEE, Officer JOSHUA BODE, individually, Officer CHRISTOPHER BONNER, individually, Officer DOMINIC CHIUCHIARELLI, individually, Officer BRIAN HARRIS, individually, TOWN OF WINDERMERE, and Officer GRIFFIN HEBEL, individually, and in furtherance thereof states and alleges as follows:

## **INTRODUCTION**

1.     Jean Samuel Celestin was in crisis, and his family called for help. They called 911 and asked for assistance because Mr. Celestin was mentally ill and was in acute distress.

2.      But from the moment the Defendant Officers arrived on scene and encountered Mr. Celestin, it was clear that they were not there to assist him.  They were there to capture and subdue him.  "We're here because somebody said that you battered them," they said.  "It's as simple as that."

3.      Mr. Celestin had long suffered from mental illness, including schizophrenia and bipolar disorder.  On April 11, 2019, he experienced an acute mental health crisis and got into an altercation with his family members.  Concerned for his safety and for their own, his mother and sister left the house, called 911, and asked for assistance removing Mr. Celestin from the house. Mr. Celestin had been in crisis before, and his family was familiar with state policies for involuntarily committing a person to a mental health facility for emergency treatment.  They tried to initiate that process on April 11, 2019, but the Defendant Officers who responded were either unfamiliar or uninterested with the proper procedures for securing appropriate treatment for people in acute distress.

4.      The Defendant Officers who responded to the 911 call failed to engage any mental health professionals to assist them in the intervention.  Instead, Ocoee Police Department ("OPD") Officers Joshua Bode and Christopher Bonner—who were assigned to the Road Patrol Division— knocked on Mr. Celestin's door and demanded that Mr. Celestin answer for the altercation between him and his mother and sister. Defendants Bode and Bonner treated Mr. Celestin like a common criminal, and when his mental health crisis manifested in obvious delusions and unusual statements, they responded with callous sarcasm.  The Officers escalated the interaction, growing angrier and angrier, each of them firing tasers at Mr. Celestin, knocking him to the ground.

5.      After Defendant Bonner tased Mr. Celestin for five seconds, Mr. Celestin sat against a pillar, pleading with the officers to accept his surrender, placing his hands in the air and

2

promising, "I'll stop! I'll stop! Please, sir! Arrest me!" But the Officers were unsatisfied, and shouted demands and threats at Mr. Celestin, even though it was apparent that he was too disoriented, unwell, and/or distressed to understand their instructions, much less to comply. As Mr. Celestin sat on the ground, with his wrists in the air, asking the Officers to arrest him, Officer Joshua Bode pointed his pistol at Mr. Celestin's chest and screamed, "YOU ARE ABOUT TO GET SHOT! GET ON YOUR FUCKING STOMACH RIGHT NOW!"

6.      After Mr. Celestin panicked and fled, Defendant Griffin Hebel from the Windermere Police Department tackled Mr. Celestin to the ground, and Defendant OPD Officer Dominic Chiuchiarelli drove his taser into Mr. Celestin's back, tasing him at one point for twenty continuous seconds. Moments later, Defendants restrained Mr. Celestin in the prone position using a "hobble" restraint, otherwise known as a hogtie. Hobble restraints are known to cause death by positional asphyxia, and the United States Department of Justice advises against using them. If a hobble restraint must be used, officers are required to turn the subject off of their stomach *immediately* after the restraint is applied and monitor the subject carefully so they can obtain medical treatment as necessary.

7.      Notwithstanding these clear warnings and standard precautions, Defendants applied a hobble restraint to Mr. Celestin and left him face down in the prone position for almost a full minute, ignoring him as he lay dying in the grass. When Defendants finally turned Mr. Celestin off of his stomach, he had stopped breathing and did not have a pulse. Defendants began performing chest compressions, with the assistance of a machine that gave CPR instructions. Although the machine instructed Defendants to "give breath" (i.e., conduct mouth-to-mouth resuscitation) approximately every twenty seconds during the ten minutes before EMTs arrived, no Defendant ever did. Although Mr. Celestin's airway was blocked, Defendant Bode refused to

3

completely clear it because he claimed that he was concerned that Mr. Celestin would "bite [his] finger off," even though he knew Mr. Celestin's heart was not beating.

8.      As a result of Defendants' improper use of the hobble restraint and their refusal to provide proper medical care, Mr. Celestin died of sudden cardiorespiratory arrest.

## **PARTIES, JURISDICTION, AND VENUE**

9.      Plaintiff Rose Marie Celestin is, and at all times material to this cause of action was, a resident of Orange County, Florida.  She is the next of kin and the representative of the estate of her deceased son, Jean Samuel Celestin.

10.     Defendant City of Ocoee is a municipal corporation duly organized and existing under the laws of the State of Florida, maintaining, operating, and administering a police department known as the Ocoee Police Department (hereinafter referred to as "OPD"), with agents, servants, and employees acting on behalf of the City of Ocoee.

11.     At all times relevant hereto, Defendant Officer Joshua Bode was in the OPD, acting in the capacity of agent, servant, and employee of the City of Ocoee, within the scope of his employment or acting with deliberate indifference, malice, ill-will and/or reckless disregard for the health and safety of Jean Samuel Celestin.

12.     At all times relevant hereto, Defendant Officer Christopher Bonner was in the OPD, acting in the capacity of agent, servant, and employee of the City of Ocoee, within the scope of his employment or acting with deliberate indifference, malice, ill-will and/or reckless disregard for the health and safety of Jean Samuel Celestin.

13.     At all times relevant hereto, Defendant Officer Dominic Chiuchiarelli was in the OPD, acting in the capacity of agent, servant, and employee of the City of Ocoee, within the scope

4

of his employment or acting with deliberate indifference, malice, ill-will and/or reckless disregard for the health and safety of Jean Samuel Celestin.

14.     At all times relevant hereto, Defendant Officer Brian Harris was in the OPD, acting in the capacity of agent, servant, and employee of the City of Ocoee, within the scope of his employment or acting with deliberate indifference, malice, ill-will and/or reckless disregard for the health and safety of Jean Samuel Celestin.

15.     Defendant Town of Windermere is a municipal corporation duly organized and existing under the laws of the State of Florida, maintaining, operating, and administering a police department known as the Windermere Police Department (hereinafter referred to as "WPD"), with agents, servants, and employees acting on behalf of the Town of Windermere.

16.     At all times relevant hereto, Defendant Officer Griffin Hebel was in the WPD, acting in the capacity of agent, servant, and employee of the Town of Windermere, within the scope of his employment or acting with deliberate indifference, malice, ill-will and/or reckless disregard for the health and safety of Jean Samuel Celestin.

17.     Defendant Officers Bode, Bonner, Chiuchiarelli, Harris, and Hebel are referred to collectively herein as the "Individual Defendants."

18.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, Florida's Wrongful Death Act, Fla. Stat. §§ 768 *et seq.*, and Florida state common law, seeking damages in excess of thirty thousand dollars ($30,000.00), exclusive of costs, attorneys' fees, and interest.

19.     All conditions precedent to the filing of this action have either been performed or waived, including, without limitation, notice to Defendant the City of Ocoee and Town of Windermere, pursuant to Fla. Stat. §768.28.

## JURY DEMAND

20.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

### Background: Mr. Celestin's Background and History of Mental Illness

21.     Jean Samuel Celestin was the beloved son of Dr. Rose Marie Celestin, a physician who has resided and worked in central Florida for over fifteen years.  He was also a beloved younger brother to Joanne (Grace) Celestin, Jean Guy Celestin, and Jean McGianni Celestin.

22.     Mr. Celestin suffered chronic and severe mental illness for a number of years before his death.  He had been diagnosed with schizophrenia, paranoia, depression with psychosis, anxiety, and bipolar disorder, among other disorders.

23.     Before the onset of his illness at age seventeen, Mr. Celestin was a star pupil at a magnet program, a member of his high school basketball team, and a spiritual leader who regularly organized outdoor bible study groups.

24.     Although struggles with mental illness caused Mr. Celestin to withdraw from many of his social relationships, he remained close with his siblings and was happiest at family gatherings.

25.     Throughout his struggles with mental illness, Mr. Celestin was never physically aggressive or violent, and he was never arrested for any crime.

26.      Before Mr. Celestin's family called for assistance with his mental health crisis on April 11, 2019, Mr. Celestin had been psychiatrically hospitalized on two occasions pursuant to Florida's Baker Act, once in 2013 and once in 2017.  Each instance was preceded by an acute mental health crisis. Mr. Celestin never became physically aggressive or violent during either hospitalization.

27.     The Baker Act allows doctors, mental health professionals, judges, and law enforcement to commit a person to a mental health treatment center for up to 72 hours if the person displays certain violent or suicidal signs of mental illness.

**Officers Approach Mr. Celestin as a Criminal, Not a Patient**

28.     On April 11, 2019, Jean Samuel Celestin's sister, Joanne "Grace" Celestin, and mother, Rose Marie Celestin, called 911 because Mr. Celestin was experiencing a mental health crisis and had, for the first time, become violent.

29.     At the beginning of the call, Joanne immediately informed the 911 operator that Mr. Celestin had a schizophrenia diagnosis.

30.     Joanne emphasized that she and her mother were "fine, medically." She did not ask for police to come *arrest* Mr. Celestin; rather, she informed the 911 operator that her brother needed to be removed from the house, and that he had been "Baker Acted" before using an intervention team, and that he was not on any medication.

31.     Section 394.455(28) of the Florida Statutes defines "mental illness" as "an impairment of the mental or emotional processes that exercise conscious control of one's actions or of the ability to perceive or understand reality, which impairment substantially interferes with the person's ability to meet the ordinary demands of living."

32.     In order to initiate an involuntary examination, a law enforcement officer must first certify that they have reason to believe the individual has a "mental illness." Second, a law enforcement officer must certify that because of the mental illness, either (a) the individual has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination, or (b) the individual is unable to determine for himself whether the examination is necessary. Finally, a law enforcement officer must certify that either (a) without care or treatment

7

said individual is likely to suffer from neglect or refuse care for himself and such neglect or refusal poses a real and present threat of substantial harm to his well-being and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services, or (b) there is a substantial likelihood that without care or treatment the individual will cause serious bodily harm to either himself or others in the near future, as evidenced by recent behavior. *See* Fla. Stat. § 394.463(1).  No law enforcement officer ever applied these criteria to Mr. Celestin.

33.     Rather than mobilize an adequately trained Crisis Intervention Team (CIT) to assist Mr. Celestin,[1] the 911 operator put out a radio call for a "911 investigation" due to a family disturbance, and dispatched Defendant Officers Bode, Bonner, and Chiuchiarelli to the scene, who were all assigned to the OPD Road Patrol Division.  OPD Officer Harris and WPD Defendant Officer Hebel also responded to the radio call.

34.     On information and belief, Officers Bode, Bonner, Chiuchiarelli, Harris, and Hebel had not received adequate training in mental health interventions.

35.     The OPD is a CIT Partner with the Central Florida Crisis Intervention Team and as a partner has agreed to participate in classroom and role-rehearsal training with mental health providers, clients, and advocates regarding information on:

    a.   Signs and symptoms of mental illness;

    b.   Medication and treatment;

    c.   Suicide assessment and prevention;

    d.   De-escalation techniques; and

---

[1] A Crisis Intervention Team is a community partnership between local law enforcement, mental health and addiction professionals, individuals who live with mental illness and/or addiction disorders, their families, and other advocates. *See* https://www.citinternational.org/Learn-About-CIT.

e.   Other information and techniques to facilitate people with mental illness into treatment rather than jail.

36.    The OPD has agreed to designate well-trained staff to respond to situations involving a person with a mental illness, including specially trained police officers that can de-escalate a situation and/or reduce the stigma of mental illness when a law enforcement officer makes a distinction between a symptom and a crime.  The OPD has acknowledged that arrest is not always an appropriate response to someone whose behavior is directly related to symptoms of their disease.

37.    The OPD has not mandated CIT training for its officers.

38.    The WPD has agreed to designate well-trained staff to respond to situations involving a person with a mental illness, including specially trained police officers that can de-escalate a situation and/or reduce the stigma of mental illness when a law enforcement officer makes a distinction between a symptom and a crime.  The WPD has acknowledged that arrest is not always an appropriate response to someone whose behavior is directly related to symptoms of their disease.

39.    The WPD has set a standard that all full-time officers are CIT trained, but has not mandated CIT training for reserve officers.  CIT training is a standard for all law enforcement officers dealing with a mental health crisis.

40.    The WPD and OPD have conducted collaborative training together on the use of force related to both physical and mental health aspects of dealing with persons suspected of having a mental illness.

41.     A November 5, 2020 letter from a Florida Assistant State Attorney to the OPD Chief of Police, Charles J. Brown, pointed out that Mr. Celestin's "known history of mental illness . . . was communicated clearly to your agency dispatcher and responding officers."

42.     The November 5, 2020 letter also stated: "We are . . . aware that many first responders may not have sufficient training in responding to situations involving people with mental illness in acute distress." The letter reminded Chief Brown that "Crisis Intervention Teams have existed in one form or another for over twenty years" and emphasized the importance of community efforts "that aim[] to reduce the risk of serious injury or death during an emergency interaction between persons with mental illness, particularly those experiencing an acute crisis, and police officers."

43.     The 911 operator informed the responding Defendant Officers that Mr. Celestin had had some "Sig20 issues" (i.e., mental illness), but did not inform them of Mr. Celestin's specific diagnosis or that Mr. Celestin's family had only requested assistance in removing him from the house.

44.     When Defendant Bode arrived on scene, he approached Joanne and Rose Marie Celestin, who were sitting in a parked car down the street from the house where Mr. Celestin was located.

45.     Once again, Joanne explained that Mr. Celestin had been diagnosed with schizophrenia and bipolar disorder, that he was not on any medication, and that he had previously been "Baker Acted."

46.     Defendant Bode appeared to be unfamiliar with the Baker Act; he asked no questions relevant to its application to Mr. Celestin, he took no appropriate steps to prepare for a police interaction with a mentally ill person, particularly a person he knew to be in acute crisis.

10

He did not conduct any assessment to determine whether the standard for involuntary commitment was met.  Nonetheless, Joanne patiently educated Defendant Bode about the procedure, explaining that it included the involvement of family members, friends, other services, and a trained intervention team.

47.     Remarkably, Defendant Bode dismissed Joanne's efforts at education and brushed aside her suggestion of an intervention team, stating: "Yeah, that's kind of separate from us."

48.     Defendant Bode was wrong—Defendants were not "separate from" the Baker Act, which specifically authorizes law enforcement officers to deliver those who meet the criteria for involuntary examination to a mental health facility for treatment.  *See* Fla. Stat. § 394.463(2)(a)(2).

49.     Joanne told Defendant Bode that she intended to leave the scene with her children before any intervention occurred.

50.     Defendant Bode was incredulous, refusing to acknowledge that he had been called to assist a person in crisis, not capture a criminal.

51.     Defendant Bode stated: "You're leaving? I mean, we have a crime here.  I mean we need to investigate a crime, are you guys trying to press charges here or what?" Joanne shrugged.  When Defendant Bode asked her to confirm that she had been punched in the face, she again tried to deescalate Defendant Bode's increasing agitation: "I'm okay."

52.     After Joanne went home with her children, Rose Marie accompanied Defendant Bode to her home, where they encountered Defendant Bonner standing just outside.

53.     Defendant Bode's briefing to Defendant Bonner made clear that Defendant Bode knew that Mr. Celestin's family was seeking assistance, not arrest.  Defendant Bode mentioned that Joanne had left, and that although she had been hit in the face, she was "not really trying to press charges."

11

54.     Defendant Bode knew that Mr. Celestin was in acute mental distress.  However, contrary to standard practice, Defendant Bode did not request assistance from any mental health professionals, notify any mental health facilities that Mr. Celestin may need to be admitted, or even notify his supervisor that he was about to confront a person experiencing a mental health crisis.

55.     Inconceivably, Defendant Bode *did not inform Defendant Bonner* that Mr. Celestin was mentally ill, had schizophrenia and bipolar diagnoses, and was experiencing a mental health crisis.

56.     As Defendants Bode and Bronner approached the front door, Defendant Bode still failed to accept the reality of the situation, acting as if he were in the midst of a criminal investigation instead of a medical intervention: "I just want to make contact with him sooner than later, and then I'll start getting everyone's like specific stories."

57.     Defendant Bode was there to investigate Mr. Celestin, not connect him to the critical treatment that he needed.

58.     Although officers engaging with people in mental health crisis generally announce their presence and the purpose of their visit, Defendant Bode knocked on Mr. Celestin's door and said nothing.

59.     As soon as Mr. Celestin opened the door, he displayed signs that he was in distress, asserting that the water in the house had been poisoned and questioning whether Defendant Bode was a "real cop."

60.     Rather than reassure Mr. Celestin that they were there to assist him, Defendants Bode and Bonner both responded to Mr. Celestin's questions with callous sarcasm.

61.     This deviation from standard mental health intervention practices compounded Mr. Celestin's confusion and paranoia.  Such conduct is more than juvenile or unprofessional; it is dangerous, especially in dealing with a person who may have trouble understanding commands or distinguishing between reality and fantasy.  Indeed, the use of sarcastic and unclear language in a police encounter fatally undermines what experts say is one of the most critical tools in a police officer's tool kit for deescalating a difficult situation:  the ability to communicate clearly with a subject and be understood.

62.     De-escalation techniques are central to CIT training, but sadly and inexplicably, Defendants Bode and Bonner did not utilize them during their interactions with Mr. Celestin.

63.     When Mr. Celestin asked to see Defendant Bode's certification, Defendant Bode responded, "Yeah, let me just pull it out my pocket right now."  Mr. Celestin did not understand Mr. Bode's sarcasm, and responded, "Okay.  Go ahead."

64.     Defendant Bode raised his voice and retorted, "I don't have a certification on me," contradicting the statement he had just made to Mr. Celestin.

65.     When Mr. Celestin stated that the Defendants' uniforms did not look real, Defendant Bonner grew agitated: "Okay.  We're not gonna play this game, okay? We're here because somebody said that you battered them.  It's as simple as that."

66.     It's as simple as that.  In Defendant Bonner's own words, Defendants Bode and Bonner had no interest in Mr. Celestin's mental health crisis.  They had a singular focus: to apprehend a "criminal."

67.     When Mr. Celestin explained that he thought Defendants Bode and Bonner needed to engage a detective, it was Defendant Bonner's turn to offer sarcasm instead of compassion: "I

13

don't need a detective." "Yes you do." "No I don't." "Yes you do." "Okay, so where'd you get your law degree?"

68.     Mr. Celestin grew frustrated with the officers' obfuscation and briefly returned into the house and locked the door.

69.     Seconds later, Mr. Celestin opened the door again.

70.     At the time Mr. Celestin opened the door, he had a television remote control and a kitchen knife in his right hand. Defendant Bode later claimed that he saw the knife in Mr. Celestin's hand, but Defendant Bonner admitted that he did not.

71.      When Mr. Celestin opened the door, he stated: "Sir, I want to talk to you, but you have to talk."

72.     But Defendant Bonner had no interest in talk.  He elevated the interaction to a physical confrontation, taking a step toward Mr. Celestin, putting a finger in his chest, and instructing him, "Get back!"

73.     Defendant Bonner's aggression toward Mr. Celestin conflicts with guidelines governing interactions with people in mental health crisis and put both Mr. Celestin and Defendants Bode and Bonner in unnecessary danger.

74.     Mr. Celestin pleaded for the Officers to be civil, "I'll talk! I'll talk!"

75.     But Defendant Bode also had no interest in talk.  He pulled out his taser gun and fired it at Mr. Celestin's chest at point blank range.

76.     Mr. Celestin attempted to walk past Defendant Bonner and exit the house, but Bonner pushed him back into the house and pursued him into the house's foyer, in an escalatory deviation from standard police and mental health intervention practices.

77.     Mr. Celestin panicked, pulled Defendant Bode's taser prongs out of his chest, and moved past Defendant Bonner and out the door.

78.     Defendant Bonner pulled out his own taser gun and fired into Mr. Celestin's back, knocking him to the ground and shooting electricity through his body.

79.     As Mr. Celestin fell to the ground, he dropped the knife that he had been holding, and it broke in two pieces.

80.     At no time while he was holding the knife did Mr. Celestin point the knife toward either Defendant Bode or Defendant Bonner.

81.     When the electricity stopped, Mr. Celestin sat up against a pillar, and continued pleading with Defendants Bode and Bonner to stop their violent attack, putting his hands up, placing his wrists together so the officers could handcuff him, and repeating over and over, "I'll stop! I'll stop! I'll stop! I'll stop! I'm sorry! I'm sorry sir."

82.     But Defendants Bode and Bonner increased their aggression.

83.     Defendant Bonner screamed: "GET ON YOUR STOMACH! NOW!"

84.     Mr. Celestin was clearly confused, disoriented, and unable to comply, Mr. Celestin repeated, "I'll stop! I'll stop!!"

85.     Defendant Bode pointed his pistol straight at Mr. Celestin's chest, and screamed, "GET DOWN! NOW! GET DOWN NOW!"

86.     Mr. Celestin was already down, sitting helplessly on the ground and crying, "I'll stop! Please, sir, I'm sorry!"

87.     Defendant Bonner ignored Mr. Celestin's pleas, stating, "Get on your stomach. You just attacked me for no reason," which was untrue—Mr. Celestin had not attacked him,

Defendant Bonner had pushed Mr. Celestin into the house—"I'm only going to tell you one more time. Get on your stomach, or I'm gonna tase you again."

88.     Without any provocation, and with his pistol still aimed at Mr. Celestin's chest, Defendant Bode suddenly screamed, "YOU ARE ABOUT TO GET SHOT! GET ON YOUR FUCKING STOMACH RIGHT NOW!"

89.     At the time Defendant Bode threatened to kill Mr. Celestin, Mr. Celestin was unarmed, sitting on the ground against a pillar, with his hands raised in surrender.

90.     Mr. Celestin began to turn onto his stomach and place his hands on the ground, but Defendant Bode screamed at him again: "GET ON YOUR FUCKING STOMACH RIGHT NOW!"

91.     Defendant Bode's unnecessary and threatening screaming startled Mr. Celestin, interrupting his motion toward his stomach, and Mr. Celestin sat back up.

92.     Mr. Celestin was terrified. He begged Defendants Bode and Bonner to end the confrontation. "Sir, I'm sorry. Arrest me. I'm so sorry." He held his wrists together so the officers could handcuff him.

93.     Defendant Bonner repeated his lie: "You attacked me. That's a different story. Get on your stomach."

94.     "I didn't attack you," Mr. Celestin corrected him.

95.     Defendant Bonner refused to make any accommodation for Mr. Celestin, who was attempting to surrender to the officers but, because of his mental illness, was clearly unable to comply with the officers' particular (and unnecessary) instruction to lie on his stomach. Defendant Bonner simply repeated his instruction and followed it with a threat: "Look dude. You've been tased. Get on your stomach or I will light you up again, you understand me?"

96.     Mr. Celestin did not understand.  He was confused and could not comprehend why Defendants Bode and Bonner were so angry.  He panted in exasperation, and briefly motioned toward his leg.

97.     Defendant Bonner stated, "Get your hand out of your pocket."

98.     Defendant Bode, who was still aiming his gun at Mr. Celestin, resumed his screaming, refusing to match Mr. Celestin's calm demeanor: "DO NOT! DO NOT PUT YOUR HAND IN YOUR POCKET! GET ON YOUR STOMACH RIGHT NOW!"

99.     Although Defendant Bonner had the opportunity to adapt his tactics and instructions to the situation, he simply repeated the same instruction once again: "Get on your stomach."

100.    Mr. Celestin still could not understand why Defendants Bode and Bonner were angry.  His mother said something to him in Creole.

101.    Mr. Celestin exhaled and pleaded, "Sir, I need help."

102.    But Defendants Bode and Bonner were not there to help, they were there to apprehend, and Mr. Celestin began to realize that they did not have his wellbeing in mind.

103.    Mr. Celestin had put his hands up in surrender, offered his wrists to the officers, attempted to lie on his stomach, begged the officers to arrest him, and apologized repeatedly, but Defendants Bode and Bonner responded with threats, refusing to conform their conduct and instructions to the demands of the situation and make accommodations for Mr. Celestin's illness.

104.    Mr. Celestin got up from the ground and fled on foot.

105.    As he fled, he attempted to avoid all officers present and made no aggressive motions toward anyone.

**Officers Kill Mr. Celestin by Tasing and Restraining Him with a "Hobble"**

106.    As soon as Mr. Celestin crossed the street, he was intercepted by Defendant Officer Hebel of the WPD, who tackled Mr. Celestin to the ground.

107.    Defendant Officer Chiuchiarelli fired his taser gun at Mr. Celestin, running electricity through Mr. Celestin's body for approximately twelve continuous seconds while Defendant Hebel wrestled Mr. Celestin to the ground.

108.    Mr. Celestin cried out in pain.

109.    Defendant Bode pursued and joined the struggle with Mr. Celestin on the ground.

110.    After Defendant Chiuchiarelli finally stopped firing his taser and Defendants Bode and Hebel pinned Mr. Celestin on the ground, Defendant Bonner announced victory: "We've got him."

111.    For the second time in only eighty seconds, a Defendant threatened to kill Mr. Celestin, as Defendant Bonner stated: "If you move again, you're going to get shot, do you understand me?"

112.    At the time Defendant Bonner threatened to kill Mr. Celestin, Mr. Celestin was unarmed, and was being pinned to the ground on his stomach by Defendants Bode, Chiuchiarelli, and Hebel.

113.    Mr. Celestin lay face down in the grass and wriggled in desperation.

114.    Defendant Chiuchiarelli fired his taser again, this time in "drive mode," pressing the gun directly into Mr. Celestin's body and firing for approximately five continuous seconds.

115.    Eight seconds later, Defendant Chiuchiarelli drove his taser gun into Mr. Celestin's back again, this time firing for approximately twenty seconds, violating guidelines for safe and appropriate taser deployment.

116.     As Defendant Chiuchiarelli filled Mr. Celestin's body with electricity, Defendant Bonner placed his baton across Mr. Celestin's back and shoulders and pressed his chest into the ground.

117.     Mr. Celestin moaned in pain, obviously unable to breathe, but Defendant Bonner continued pressing his baton against Mr. Celestin's back for approximately two more minutes.

118.     After Mr. Celestin had already been subdued, one Defendant announced to his radio, "We're across the street.  Still fighting."

119.     Defendant Hebel declared, "I got a hobble in the back of my car."

120.     A "hobble," otherwise known as a "hogtie," is a controversial restraint known to cause death by positional asphyxia.

121.     To apply a hobble, a person is placed in the prone position, with their hands handcuffed behind their back, and their ankles attached by handcuffs or other restraints.  The hobble is then used to connect the handcuffs and leg restraints.

122.     A 1995 bulletin from the United States Department of Justice instructs: "Where possible, avoid the use of maximally prone restraint techniques (e.g., hogtying)."

123.     The bulletin provides guidelines for minimizing "the potential for in-custody injury or death" in the event that maximally prone restraint techniques must be used.

124.     The guidelines for minimizing the potential for in-custody death include: "*As soon as the subject is handcuffed*, get him off his stomach."  (Emphasis added.)

125.     The guidelines for minimizing the potential for in-custody death also include: "Monitor subject carefully and obtain medical treatment if needed."

126. Notwithstanding the commonly known dangers of the hobble restraint and the risk that Mr. Celestin would die of positional asphyxia, Defendant Hebel applied a hobble restraint to Mr. Celestin.

127. At the time Defendants applied the hobble restraint, Mr. Celestin lay calmly on his stomach, had already been subdued and was not resisting arrest.

128. Neither Defendant Bode, Bonner, Chiuchiarelli, nor Harris told Defendant Hebel not to apply the hobble restraint or otherwise intervened in the unnecessary and dangerous application of the hobble restraint.

129. Defendants Bode, Bonner, Chiuchiarelli, and Harris assisted in applying the hobble restraint by holding Mr. Celestin's limbs and pinning him to the ground.

130. Once the hobble restraint was applied, a Defendant announced, "Subject is secure."

131. Notwithstanding the standard safety precautions of turning prisoners off of their stomachs *as soon as they are handcuffed* and monitoring them carefully for medical emergencies, Defendants Hebel, Bode, Bonner, Chiuchiarelli, and Harris stood up after applying the hobble restraint to Mr. Celestin and left him on his stomach for approximately fifty-five seconds.

132. During those fifty-five seconds, Defendants Bode, Bonner, Hebel, Harris, and Chiuchiarelli simply stood next to Mr. Celestin as he lay dying on his stomach.

133. During those fifty-five seconds, Defendants Bode, Bonner, Hebel, Harris, and Chiuchiarelli did not turn Mr. Celestin off of his stomach.

134. During those fifty-five seconds, Defendants Bode, Bonner, Hebel, Harris, and Chiuchiarelli did not monitor Mr. Celestin carefully.

135. As Mr. Celestin lay dying on his stomach for fifty-five seconds, rather than monitor Mr. Celestin carefully, Defendants lamented that they were out of taser cartridges.

136.   As Mr. Celestin lay dying on his stomach for fifty-five seconds, rather than monitor Mr. Celestin carefully, Defendant Bonner turned his attention to Defendant Hebel, asking if he was alright and pointing out that his knee was "all scuffed."

137.   As Mr. Celestin lay dying on his stomach for fifty-five seconds, Defendant Bonner attempted and struggled to retract the baton he had pressed against Mr. Celestin's shoulders. Defendant Bonner had pressed the baton so firmly against Mr. Celestin's shoulders that it had come out of alignment and would not retract, even when he slammed the tip against the pavement.

138.   At some point during the fifty-five seconds that Mr. Celestin lay dying on his stomach, face down in the grass, Defendant Harris stood next to him and asked Defendant Chiuchiarelli if Mr. Celestin was okay.

139.   Rather than turn him off of his stomach, Defendant Chiuchiarelli stood by and flippantly responded, "Yeah."

140.   Neither Defendant Harris nor Defendant Chiuchiarelli made any effort to turn Mr. Celestin off of his stomach or otherwise assess his condition.

141.   Apparently unconvinced, Defendant Harris asked, "Is he breathing?"

142.   Once again, as Mr. Celestin lay dying on his stomach, Defendant Chiuchiarelli responded, "Yeah," without making any effort to turn Mr. Celestin off of his stomach, to determine if he was breathing, or otherwise assess his condition.

143.   Finally, after fifty-five crucially important seconds, Defendants turned Mr. Celestin onto his side, asking, "Jean, you awake?"

144.   Mr. Celestin was unresponsive.

145.   Defendant Chiuchiarelli now asked, "Is he breathing."

21

146.    Defendant Hebel knelt to check Mr. Celestin's vital signs and announced, "Ah, no. I don't feel a pulse."

147.    Although Mr. Celestin was not breathing and did not have a pulse, Defendants did not remove the hobble restraint for another five minutes.

148.    Defendant Hebel began performing chest compressions on Mr. Celestin.

149.    At the time Defendant Hebel began performing chest compressions on Mr. Celestin, Mr. Celestin's hands were handcuffed behind his back, and they were still attached to his feet by the hobble restraint, making it impossible for Defendant Hebel to administer effective CPR.

150.    Almost a minute after Defendant Hebel noted that Mr. Celestin was not breathing and did not have a pulse, he finally checked Mr. Celestin's airway, noted that it was blocked, informed other Defendants that Mr. Celestin's mouth was full of spit, and asked another Defendant to put on gloves to clear the airway.

151.    Twenty-five agonizing seconds passed before Defendant Bode finally put on gloves and knelt to clear Mr. Celestin's airway.

152.    But Defendant Bode refused to clear all of the debris from Mr. Celestin's airway.

153.    A few moments later, somebody asked, "Did we clear his mouth," and Defendant Bode responded, "I did a little bit, but I don't want him to bite my finger off here either, he already lunged at me with a knife here."

154.    Although Mr. Celestin at one point had a knife in his hand, he never lunged at Defendant Bode with a knife.

155.    Defendant Bode made the remarkable decision to withhold life-saving measures— placing concern for his finger above his concern for Mr. Celestin's life—almost *two minutes* after Defendant Hebel had announced that Mr. Celestin *did not have a pulse*.

22

156.    Because Mr. Celestin's heart had stopped beating two minutes before Defendant Bode refused to completely clear Mr. Celestin's airway, Defendant Bode's fear for his finger was completely unreasonable.

157.    Defendant Bode falsely claimed that he was afraid that Mr. Celestin would bite his finger off because he knew he had a duty to take emergency measures to save Mr. Celestin's life and that he was breaching that duty.

158.    Once again, Defendant Bode made clear that he was not on scene to help Mr. Celestin survive; he was there to subdue him, and the job was done.

159.    Finally, almost five minutes after noticing that Mr. Celestin did not have a pulse and was not breathing, Defendants finally removed the hobble restraint.

160.    Defendants performed chest compressions on Mr. Celestin for approximately ten total minutes before EMTs arrived.

161.    At some point during that time, Defendants had attached an Automated External Defibrillator ("AED") device to Mr. Celestin, which gave instructions for when to compress Mr. Celestin's chest and when to "give breath" (i.e., perform mouth-to-mouth resuscitation).

162.    Although the AED instructed Defendants to "give breath" approximately every twenty seconds, no Defendant ever performed mouth-to-mouth resuscitation on Mr. Celestin during the ten minutes between when they noticed that he had stopped breathing and when the EMTs arrived.

163.    Defendant Bode was in possession of a barrier mask that would have enabled him or any other Defendant to give Mr. Celestin a breath as part of the CPR procedure, but the Officers refused to use it.

23

164.    At one point, when the AED machine instructed Defendants to give Mr. Celestin a breath, Defendant Bode announced, "I have a barrier mask here if anyone wants to . . . ."  He left a pause for any Defendant to volunteer to apply the mask and give Mr. Celestin life-saving mouth-to-mouth resuscitation.  But no Defendant volunteered.  "No?" he asked again.  Still, no Defendant volunteered.   Defendants   continued   chest   compressions   and   ignored   the   AED   machine's instructions to "give breath."

165.    Once again, now approximately three-and-a-half minutes after Defendant Hebel had announced that Mr. Celestin did not have a pulse, Defendant Bode reasserted his disregard for Mr. Celestin's life and his refusal to attempt to resuscitate Mr. Celestin by clearing his airway and giving him a breath: "I don't want to stick my hand in his mouth.  He came at me with a knife."

166.    Although Mr. Celestin at one point had a knife in his hand, he never "came at" Defendant Bode with a knife.

167.    About seven minutes after Defendants realized Mr. Celestin was not breathing and did not have a pulse, and after the AED machine had repeatedly instructed the Officers to give Mr. Celestin a breath, somebody finally asked, "Okay, who's got a breath mask?" Defendants found a mask, but they all refused to apply it and begin mouth-to-mouth resuscitation.

168.    Approximately eight minutes after Defendants realized Mr. Celestin was not breathing and did not have a pulse, Defendant Bonner still expressed more concern for their own safety than for Mr. Celestin's survival: "Hey watch out, if he comes to, he could be violent again."

169.    Approximately nine minutes after Mr. Celestin had stopped breathing, as Defendant Bode stood by and watched other officers perform chest compressions, hopes for Mr. Celestin's survival dimmed.  But Defendant Bode still expressed no concern for Mr. Celestin's life, asking the others, "Has anyone seen my glasses?"

170.    As it became increasingly clear that Mr. Celestin would not survive, Defendant Bode asked Defendant Bonner if he was okay.  Defendant Bonner said that he was "a little pissed," and Defendant Bode responded, "Yeah, me too."

171.    But Defendant Bode and Bonner were not angry with themselves because they had failed to safely and appropriately intervene in a mental health crisis and connect Mr. Celestin with appropriate treatment.  They were not even angry because they had killed Mr. Celestin.

172.    Defendant Bonner was angry *at* Mr. Celestin, who lay dying on the ground: "I mean, I'm trying to talk as nicely as I can to him, and the fucker pulled a knife."

173.    Although Mr. Celestin at one point had a knife in his hand, he never "pulled a knife" on any Defendant.

174.    As EMTs loaded Mr. Celestin into an ambulance approximately twenty-three minutes after he had taken his last breath, Defendant Bonner once again demonstrated that he placed no value on Mr. Celestin's life, and blamed Mr. Celestin for his own mental illness, stating: "With everything I've already got going on, this, this dumbass decided to do this crap."

175.    Mr. Celestin was transported to the hospital where he was pronounced dead.

176.    A medical examiner conducted an autopsy and concluded that Mr. Celestin's death was caused by "sudden cardiorespiratory arrest during law enforcement subdual and restraint, with significant contributory factors of recurrent depression with psychotic features, mild cardiac hypertrophy, and obesity.  The manner of death is classified as homicide."  The report noted the use of "prone hobbling."

177.    Mr. Celestin's death was caused by: the multiple taser deployments on Mr. Celestin by Defendants Bode, Bonner, and Chiuchiarelli; the pressure of Defendant Bonner's baton against Mr. Celestin's back and shoulders as Mr. Celestin lay on his stomach; the use of the hobble by

25

Defendants Hebel, Bode, Bonner, Chiuchiarelli, and Harris; the failure of Defendants Hebel, Bode, Bonner, Chiuchiarelli, and Harris to turn Mr. Celestin onto his stomach immediately after applying the hobble; the failure of Defendants Hebel, Bode, Bonner, Chiuchiarelli, and Harris to monitor Mr. Celestin closely after applying the hobble; and the refusal of Defendants Hebel, Bode, Bonner, Chiuchiarelli, and Harris to provide adequate, life-saving CPR after Mr. Celestin stopped breathing.

178. The Individual Defendants' actions constituted outrageous conduct, were reckless, and demonstrated a callous indifference to and willful disregard of Mr. Celestin's federal and state protected rights.

179. Mr. Celestin experienced severe conscious pain, suffering, fear, and pre-death terror as he was tased on multiple occasions, as he was struggling to breathe, and as he was slowly dying.

180. As a direct and proximate result of defendants' actions, Mr. Celestin suffered severe physical injury, pain and suffering, loss of life, and loss of enjoyment of his life.

181. The acts of the Individual Defendants were reckless, willful, wanton, and malicious, thus entitling plaintiff to an award of punitive damages.

182. Dr. Rose Marie Celestin, in her own right, suffered and will suffer emotional injuries, and was deprived and will continue to be deprived of her son's future services in all respects, including but not limited to the loss of love, companionship, comfort, society, attention, services, income, and support.

## COUNT I
### 42 U.S.C. § 1983
(Against Individual Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli,
Brian Harris, and Griffin Hebel)

183.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

184.     By reason of the foregoing, by confining Mr. Celestin against his will, by using force against Mr. Celestin when he was not resisting, by punishing Mr. Celestin after he had been detained, by tasing, prone hobbling, and using gratuitous, excessive, and unconscionable force against Mr. Celestin, resulting in his death, by failing to prevent their fellow officers from doing the same, by failing to engage adequately trained mental health professionals (such as a Crisis Intervention Team), and by failing to provide or seek medical attention for Mr. Celestin as he lay dying on the grass, the Individual Defendants deprived Mr. Celestin of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.   The Individual Defendants' conduct manifested deliberate indifference to Mr. Celestin's constitutional rights.

185.     The Individual Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as OPD and WPD officers.   Said acts by the Individual Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.   The Individual Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Celestin of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

27

186.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and Mr. Celestin sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff demands judgment against the Individual Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffin Hebel for the damages outlined above, attorneys' fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper.

## COUNT II
42 U.S.C. § 1983
(Against Defendants City of Ocoee and Town of Windermere)

187.     Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth herein.

188.     At all relevant times, Defendants City of Ocoee and Town of Windermere were aware that their existing policies and practices made it substantially likely that individuals placed in hobble restraints, individuals subjected to taser devices, and individuals suffering from mental health crisis would be denied their federally protected rights under the Fourth and Fourteenth Amendments in the course of encounters with OPD and WPD, and acted with deliberate indifference in failing to act to prevent or mitigate the denial of those rights.

189.     The City of Ocoee and Town of Windermere caused the violation of Mr. Celestin's constitutional rights by deliberate indifference to the risk that people placed in hobble restraints, people subjected to taser devices, and people undergoing mental health crises would be subjected to unlawful and excessive use of deadly force during encounters, including, without limitation, by: failing to adopt policies and procedures limiting the use of hobble restraints to exceptional circumstances not present in the incidents described above; failing to adopt policies and procedures concerning safety precautions for the use of hobble restraints; failing to adopt

28

policies and procedures concerning the safe use of taser devices; improperly implementing a CIT program; and failing to institute policies and procedures to protect the rights of individuals with mental illness during police encounters despite the known and obvious risk that such persons would suffer harm in the course of these encounters, as illustrated by a pattern of past uses of excessive force by OPD and WPD officers against such persons.

190.     At all relevant times, the City of Ocoee's and the Town of Windermere's policies and practices concerning OPD and WPD encounters with individuals suffering from mental health crises were inadequate to respond to a pattern of past incidents similar to Mr. Celestin's fatal encounter on April 11, 2019.  The City of Ocoee and the Town of Windermere nonetheless failed to address those inadequacies, of which they were or should have been aware.

191.     As a direct and proximate result of the City of Ocoee's and the Town of Windermere's policies, practices, and customs, Plaintiff and Mr. Celestin sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff demands judgment against Defendants City of Ocoee and Town of Windermere for the damages outlined above, attorneys' fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper.

## **COUNT III**
### Title II of the Americans with Disabilities Act
### (Against City of Ocoee and Town of Windermere)

192.     Plaintiff repeats and realleges the above paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

193.     At all times material to this action, the City of Ocoee, the OPD, the Town of Windermere, and the WPD were public entities that operated services, programs, and/or

activities, including the involuntary commitment of mentally ill persons pursuant to Florida's Baker Act.

194.     Mr. Celestin was a qualified individual with a disability within the meaning of 42 U.S.C. § 12132.

195.     The City of Ocoee and Town of Windermere are responsible for ensuring that services, programs, and activities conducted by and through the OPD and WPD, respectively, comply with Title II the Americans with Disabilities Act, and for remedying any non-compliance.

196.     Acting through the OPD, the City of Ocoee denied Mr. Celestin the benefits of the services, programs, or activities of the OPD and the City of Ocoee, and subjected Mr. Celestin to unlawful discrimination by, *inter alia*, failing to provide reasonable accommodations for his disability during the fatal encounter on April 11, 2019.

197.     Acting through the WPD, the Town of Windermere denied Mr. Celestin the benefits of the services, programs, or activities of the WPD and the Town of Windermere, and subjected Mr. Celestin to unlawful discrimination by, *inter alia*, failing to provide reasonable accommodations for his disability during the fatal encounter on April 11, 2019.

198.     The City of Ocoee and the Town of Windermere were aware that their existing policies and practices made it substantially likely that disabled individuals would be denied their federally protected rights under the Americans with Disabilities Act in the course of encounters with the OPD and WPD and acted with deliberate indifference in failing to act to prevent or mitigate the denial of those rights.

199.     At the time of Mr. Celestin's death, the City of Ocoee's policies and practices concerning OPD encounters with individuals suffering from mental health crises were inadequate to respond to a pattern of past incidents similar to Mr. Celestin's fatal encounter on

30

April 11, 2019.  The City of Ocoee nonetheless failed to address those inadequacies of which it was or should have been aware.

200.        At the time of Mr. Celestin's death, the Town of Windermere's policies and practices concerning WPD encounters with individuals suffering from mental health crises were inadequate to respond to a pattern of past incidents similar to Mr. Celestin's fatal encounter on April 11, 2019.  The Town of Windermere nonetheless failed to address those inadequacies of which it was or should have been aware.

201.        Mr. Celestin's death was a direct and proximate result of the City of Ocoee's and the Town of Windermere's violations of Title II of the Americans with Disabilities Act.

WHEREFORE, Plaintiff demands judgment against Defendants City of Ocoee and Town of Windermere for the damages outlined above, attorneys' fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper.

## COUNT IV
Rehabilitation Act of 1973
(Against City of Ocoee and Town of Windermere)

202.        Plaintiff repeats and realleges the above paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

203.        At all times material to this action, the City of Ocoee and the Town of Windermere received federal financial assistance within the meaning of 29 U.S.C. § 794(a).

204.        At all relevant times herein, Mr. Celestin was a person with a "disability" within the meaning of 29 U.S.C. § 705(9)(B).

205.        At all relevant times herein, Mr. Celestin was an "individual with a disability" within the meaning of 29 U.S.C. § 705(20)(B).

31

206.     At all relevant times herein, the City of Ocoee and the Town of Windermere constituted "programs or activity" within the meaning of 29 U.S.C. § 794(b) in that said Defendants (1) were an instrumentality of the state or local government, and  (2) provided the program and activity of taking a person such as Mr. Celestin, who allegedly, as a result of a mental disorder, was a danger to others, or to himself, or gravely disabled, into custody pursuant to Florida's Baker Act.

207.     At all relevant times herein, Mr. Celestin was otherwise qualified, with or without reasonable accommodation, within the meaning of 29 U.S.C. § 794(a), to participate in the programs and activities of the City of Ocoee and Town of Windermere.  Such programs and activities included being safely and appropriately being taken into custody pursuant to Florida's Baker Act if and when he, as a result of a mental disorder, was allegedly a danger to others, or to himself, or gravely disabled.

208.     At all relevant times herein, in engaging in the conduct alleged above, the City of Ocoee and the Town of Windermere discriminated against Mr. Celestin within the meaning of 29 U.S.C. § 794(a) with regard to their services, programs, and activities.  The City of Ocoee and the Town of Windermere violated Mr. Celestin's federally guaranteed right to be free from discrimination on the basis of disability by: (a) failing to make reasonable modifications to their policies, practices, and procedure to ensure that his needs as an individual with a disability would be met; and (b) failing to appropriately train the Individual Defendants on how to safely appropriately take a person, such as Mr. Celestin, who was allegedly a danger to himself and/or others, into custody pursuant to Florida's Baker Act.  Such actions constitute (a) discrimination solely because of Mr. Celestin's disability, and (b) deliberate indifference to Mr. Celestin's rights

32

in that the City of Ocoee and Town of Windermere knew that harm to Mr. Celestin's federally protected rights was substantially likely and failed to act upon that likelihood.

209.       Mr. Celestin's death was a direct and proximate result of the City of Ocoee's and the Town of Windermere's violations of the Rehabilitation Act of 1973.

WHEREFORE, Plaintiff demands judgment against Defendants City of Ocoee and Town of Windermere for the damages outlined above, attorneys' fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper.

## **COUNT V**
### Wrongful Death
(Against City of Ocoee and Town of Windermere)

210.       Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

211.       At all times material, Defendant the City of Ocoee, on its own, or through its agents, employees, or apparent agents, including but not limited to Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, and Defendant the Town of Windermere, on its own, or through its agents, employees, or apparent agents, including but not limited to Griffen Hebel, owed a duty of care to Mr. Celestin to use reasonable care to insure his safety.

212.       At all times material, Defendant the City of Ocoee, on its own, or through its agents, employees, or apparent agents, including but not limited to Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, and Defendant the Town of Windermere, on its own, or through its agents, employees, or apparent agents, including but not limited to Griffen Hebel, owed a duty of care to Mr. Celestin to use reasonable care to design and maintain restraint equipment and ensure it is used in a reasonably safe manner.

213.    At all times material, Defendant the City of Ocoee, on its own, or through its agents, employees, or apparent agents, including but not limited to Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, and Defendant the Town of Windermere, on its own, or through its agents, employees, or apparent agents, including but not limited to Griffen Hebel, owed a duty of care to Mr. Celestin to use reasonable care to hire, retain, and supervise experienced and qualified police officers and personnel to respond to calls concerning persons with mental illness and/or persons in acute mental distress.

214.    At all times material, Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel were acting within the course and scope of their employment.

215.    At the time of the incidents described above, Defendant the City of Ocoee, on its own, or through its agents, employees, or apparent agents, including but not limited to Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, and Defendant the Town of Windermere, on its own, or through its agents, employees, or apparent agents, including but not limited to Griffen Hebel, breached their duties of care owed to Mr. Celestin.

216.    Defendant the City of Ocoee, on its own, or through its agents, employees, or apparent agents, including but not limited to Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, and Defendant the Town of Windermere, on its own, or through its agents, employees, or apparent agents, including but not limited to Griffen Hebel, breached their duties to use reasonable care to design and maintain restraint equipment and ensure it is used in a reasonably safe manner and to respond to calls concerning persons with mental illness and/or persons in acute mental distress by:

   a.  failing to hire and retain appropriately trained police officers;

   b.  failing to properly evaluate Mr. Celestin's mental illness;

34

c.  failing to protect Mr. Celestin from his own mental illness;

d.  failing to adopt a written policy, procedure, practice, administrative, or general or special order wherein staff is prohibited from using hobble restraints and/or may only use hobble restraints under exceptional circumstances not present in the incidents described above;

e.  failing to adopt a written policy, procedure, practice, administrative, or general or special order wherein staff is required to implement all necessary safety precautions in the event a hobble restraint is used;

f.  failing to adopt a written policy, procedure, practice, administrative, or general or special order wherein staff is required to appropriately interact with persons with mental illness and/or persons in acute mental distress;

g.  adopting policies or practices which cause or contribute to the unnecessary use of hobble restraints;

h.  adopting policies or practices which cause or contribute to the unsafe use of hobble restraints;

i.  adopting policies or practices which cause or contribute to a failure to appropriately interact with persons with mental illness and/or persons in acute mental distress;

j.  failing to develop and employ reporting procedures to address supervision inadequacies;

k.  failing to follow its own policies or procedures, such that such failures have become a practice at the Ocoee Police Department; and

l.  failing to ensure Mr. Celestin's safety in other ways which may be determined through discovery.

35

217.    Defendants the City of Ocoee and the Town of Windermere are liable for acts, events, and/or omissions by any person or entity under their respective control, direct or indirect, including their employees, agents, officers, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, pursuant to Section 768.28(9)(a) of the Florida Statutes, while such persons are acting within the scope of employment.

218.    The duties alleged in the immediately preceding paragraphs include but are not limited to the duties to provide proper supervision; proper hiring; appropriate background and referral checks; and proper retaining and dismissal of employees, agents, consultants, and independent contractors.

219.    As a direct a proximate result of the City of Ocoee's and/or the Town of Windermere's negligence, Mr. Celestin died.

220.    As a direct and proximate result of Defendants the City of Ocoee's and/or the Town of Windermere's negligence, the estate of Mr. Celestin, is authorized by Florida's Wrongful Death Act, Fla. Stat. §§ 768 *et seq.*, and hereby demands recovery of damages including any and all incurred medical expenses, funeral, and burial expenses.

221.    As a further proximate result of Defendants, the City of Ocoee's and/or the Town of Windermere's negligence, the survivor has lost the future support and services of her son and has endured past pain and suffering and will continue to endure pain and suffering in the future. Pursuant to Florida's Wrongful Death Act, Fla. Stat. §§ 768 *et seq.*, Plaintiff hereby demands all damages recoverable by survivors.

WHEREFORE, PLAINTIFF demands judgment against the City of Ocoee and Town of Windermere for the damages outlined above, with costs, and any further relief as the Court deems proper.

36

## COUNT VI
### Battery
### (Against City of Ocoee)

222.     Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

223.     This is a cause of action against Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris in their official capacities and therefore a claim against the City of Ocoee.

224.     Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris were acting on behalf of the City of Ocoee, and at all times material hereto were acting in the course and scope of their employment.

225.     Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris actually and intentionally touched and/or stuck Mr. Celestin against his will.

226.     Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris intentionally caused Mr. Celestin bodily harm.

227.     As a result of the actions of Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, Mr. Celestin suffered damages including but not limited to bodily injury which resulted in pain and suffering, disability, aggravation of a pre-existing condition, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages and loss of earning capacity, physical inconvenience, discomfort, loss of time, mental pain and suffering, embarrassment, humiliation, and injuries to his reputation, and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against the City of Ocoee for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT VII
Battery
(Against Town of Windermere)

228.   Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

229.   This is a cause of action against Officer Griffen Hebel in his official capacity and therefore a claim against the Town of Windermere.

230.   Officer Griffen Hebel was acting on behalf of the Town of Windermere, and at all times material hereto were acting in the course and scope of their employment.

231.   Officer Griffen Hebel actually and intentionally touched and/or stuck Mr. Celestin against his will.

232.   Officer Griffen Hebel intentionally caused Mr. Celestin bodily harm.

233.   As a result of the actions of Officer Griffen Hebel, Mr. Celestin suffered damages including but not limited to bodily injury which resulted in pain and suffering, disability, aggravation of a pre-existing condition, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages and loss of earning capacity, physical inconvenience, discomfort, loss of time, mental pain and suffering, embarrassment, humiliation, and injuries to his reputation, and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against the Town of Windermere for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT VIII
Battery
(Against All Individual Defendants)

234.   Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

38

235.    This is a cause of action against Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel in their individual capacities.

236.    The actions of Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel in touching and/or striking Mr. Celestin and intentionally causing bodily harm were outside the scope of their employment in that they were committed in bad faith, with malicious purpose and/or in a manner exhibiting wanton and willful disregard for the Mr. Celestin's rights, including but not limited to excessive force, including tasing and hobble restraining Mr. Celestin without cause.

237.    Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel actually and intentionally touched and/or stuck Mr. Celestin against his will.

238.    Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel intentionally caused Mr. Celestin bodily harm.

239.    As a result of the actions of Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel, Mr. Celestin suffered damages including but not limited to bodily injury which resulted in pain and suffering, disability, aggravation of a pre-existing condition, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages and loss of earning capacity, physical inconvenience, discomfort, loss of time, mental pain and suffering, embarrassment, humiliation, and injuries to his reputation, and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT IX
Assault
(Against City of Ocoee)

240.     Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through hundred eighty-two (182) as if the same were fully set forth at length herein.

241.     This is a cause of action against Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris in their official capacities and therefore a claim against the City of Ocoee.

242.     Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris were acting on behalf of the City of Ocoee, and at all times material hereto were acting in the course and scope of their employment.

243.     Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris intentionally and unlawfully threatened, either by word or act, to do violence to Mr. Celestin.

244.     Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris appeared to have the ability to carry out the threat.

245.     The actions of Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris created in the mind of Mr. Celestin a well-founded fear that the violence was about to take place.

246.     As a direct and proximate result of the attack by Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, Mr. Celestin was placed in fear.  Mr. Celestin suffered injury and resulting pain and suffering, aggravation of a pre-existing condition, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against the City of Ocoee for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT X
Assault
(Against Town of Windermere)

247.    Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

248.    This is a cause of action against Officer Griffen Hebel in his official capacity and therefore a claim against the Town of Windermere.

249.    Officer Griffen Hebel was acting on behalf of the City of Ocoee, and at all times material hereto were acting in the course and scope of their employment.

250.    Officer Griffen Hebel intentionally and unlawfully threatened, either by word or act, to do violence to Mr. Celestin.

251.    Officer Griffen Hebel appeared to have the ability to carry out the threat.

252.    The actions of Officer Griffen Hebel created in the mind of Mr. Celestin a well-founded fear that the violence was about to take place.

253.    As a direct and proximate result of the attack by Officer Griffen Hebel, Mr. Celestin was placed in fear.  Mr. Celestin suffered injury and resulting pain and suffering, aggravation of a pre-existing condition, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against the Town of Windermere for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT XI
Assault
(Against All Individual Defendants)

254.    Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

255.    Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel intentionally and unlawfully threatened, either by word or act, to do violence to Mr. Celestin.

256.    Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel appeared to have the ability to carry out the threat.

257.    The actions of Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel created in the mind of Mr. Celestin a well-founded fear that the violence was about to take place.

258.    As a direct and proximate result of the attack by Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel, Mr. Celestin was placed in fear. Mr. Celestin suffered injury and resulting pain and suffering, aggravation of a pre-existing condition, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against Officers Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, Brian Harris, and Griffen Hebel for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT XII
### Negligent Hiring, Retention, and/or Supervision
### (Against City of Ocoee)

259.    Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

260.    At all times material hereto, the City of Ocoee acted by and through its employees, and officers, including but not limited to those employees, managers, and officers employed at their principal address in Ocoee, Orange County, Florida.

261.    At all times material hereto, the City of Ocoee owed a duty to all persons in a foreseeable zone of risk, including Mr. Celestin, to hire, train, retain, and supervise safe and competent police officer employees, and to ensure that police officer employees used restraints and taser devices in safe and appropriate manner.

262.    At all times material hereto, the City of Ocoee owed a duty to all persons in a foreseeable zone of risk, including Mr. Celestin, to hire, train, retain and supervise safe and competent police officer employees, and to ensure that police officer employees interacted with persons with mental illness in a safe and appropriate manner and in compliance with the City of Ocoee's policies and procedures regarding interactions with persons with mental illness, including but not limited to the City of Ocoee's use of Crisis Intervention Teams ("CIT").

263.    Defendant the City of Ocoee, prior to hiring or retaining its police officer employees, had a duty to conduct an investigation into the background, training, and prior job performances of its police officer employees because of the type of equipment being used, the type of work being done, and the vulnerability of persons with mental illness, including Mr. Celestin, that police officer employees were likely to encounter.

264.    Defendant the City of Ocoee had a duty to exercise reasonable care in the retention of its police officer employees.

265.    At all times material hereto, the City of Ocoee was liable for the negligence, carelessness, recklessness, and intentional acts of its police officer employees, including Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris.

266.    At all times material hereto, the City of Ocoee owed Mr. Celestin a duty of reasonable care, which included instituting reasonable hiring, screening, supervision, and retention of its police officer employees.

267.    At all times material hereto, the City of Ocoee assumed a duty to conduct a reasonable investigation into the background, driving, and criminal history of its police officer employees.

268.    At all times material hereto, the City of Ocoee knew or should have known that Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris were unfit to use hobble restraints, to use taser devices, and to interact with persons with mental illness as part of their employment by the City of Ocoee, and that equipping Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris with hobble restraints and taser devices and deploying them to calls for assistance for persons with mental illness was virtually certain to result in injury or serious harm.

269.    Defendant the City of Ocoee knew or in the exercise of reasonable care should have known that Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris posed a grave threat to the physical and psychological well-being and safety of other persons in the foreseeable zone of risk, including Mr. Celestin.

270.    Defendant the City of Ocoee assigned Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris to patrols that could foreseeably include the use of hobble restraints and taser devices and interactions with persons with mental illness, and

44

deployed them to interact with Mr. Celestin, who the City of Ocoee knew was a person with mental illness.

271.   Upon information and belief, at the time of that assignment and deployment, the City of Ocoee, its employees, agents, or representatives knew or should have known that Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris were not competent to use hobble restraints and taser devices or to interact with persons with mental illness.

272.   At all times material hereto, Defendant the City of Ocoee owed a duty to members of the public, including Mr. Celestin, to use reasonable care not to equip persons who are not competent to use hobble restraints and taser devices with such equipment, and not to deploy persons who are not competent to interact with persons with mental illness to calls involving persons with mental illness.

273.   Defendant the City of Ocoee breached the duty of care that it owed to Mr. Celestin and other members of the public when it equipped Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris with hobble restraints and taser devices, when it assigned them to patrols that could foreseeably include interactions with mental illness, and when it deployed them to interact with Mr. Celestin.

274.   Defendant the City of Ocoee was negligent in its hiring, retention, and supervision, and breached its duty to Mr. Celestin in all or more of the following ways:

   a. failure to conduct effective investigations of the background, training, and prior job performance of its applicants;

   b. failure to contact references or prior employers of Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, which would have

revealed incidents and a pattern of behavior demonstrating unfitness to use hobble restraints and/or taser devices, and/or to interact with persons with mental illness;

c.   unreasonable hiring and retention of police officer employees, despite information it knew or should have known had it conducted a reasonable investigation of the background, training, and prior job performance of the subject individuals;

d.   failure to adequately supervise Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, which would have prevented Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris from causing Mr. Celestin's death;

e.   failure to adequately train Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris, which would have prevented Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris from causing Mr. Celestin's death;

f.   failure to take prompt corrective action despite actual or constructive knowledge regarding the City of Ocoee's failure to perform the duties of care owed to persons who may be subjected to hobble restraints and taser devices, including Mr. Celestin, and to persons with mental illness, including Mr. Celestin; and

g.   other acts and omissions yet to be discovered.

275.   As a direct and proximate result of the City of Ocoee's breach of duty, Mr. Celestin suffered damages including but not limited to bodily injury which resulted in pain and suffering, disability, aggravation of a pre-existing condition, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages

and loss of earning capacity, physical inconvenience, discomfort, loss of time, mental pain and suffering, embarrassment, humiliation, injuries to his reputation, and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against the City of Ocoee for the damages outlined above, with costs, and any further relief as the Court deems proper.

## COUNT XIII
### Negligent Hiring, Retention, and/or Supervision
### (Against Town of Windermere)

276.     Plaintiff repeats and realleges the foregoing paragraphs numbered one (1) through one hundred eighty-two (182) as if the same were fully set forth at length herein.

277.     At all times material hereto, the Town of Windermere acted by and through its employees, and officers, including but not limited to those employees, managers, and officers employed at their principal address in Windermere, Orange County, Florida.

278.     At all times material hereto, the Town of Windermere owed a duty to all persons in a foreseeable zone of risk, including Mr. Celestin, to hire, train, retain, and supervise safe and competent police officer employees, and to ensure that police officer employees used restraints and taser devices in safe and appropriate manner.

279.     At all times material hereto, the Town of Windermere owed a duty to all persons in a foreseeable zone of risk, including Mr. Celestin, to hire, train, retain, and supervise safe and competent police officer employees, and to ensure that police officer employees interacted with persons with mental illness in a safe and appropriate manner and in compliance with the Town of Windermere's policies and procedures regarding interactions with persons with mental illness, including but not limited to the Town of Windermere's use of Crisis Intervention Teams.

280.     Defendant the Town of Windermere, prior to hiring or retaining its police officer employees, had a duty to conduct an investigation into the background, training, and prior job

47

performances of its police officer employees because of the type of equipment being used, the type of work being done, and the vulnerability of persons with mental illness, including Mr. Celestin, that police officer employees were likely to encounter.

281.    Defendant the Town of Windermere had a duty to exercise reasonable care in the retention of its police officer employees.

282.    At all times material hereto, the Town of Windermere was liable for the negligence, carelessness, recklessness, and intentional acts of its police officer employees, including Griffen Hebel.

283.    At all times material hereto, the Town of Windermere owed Mr. Celestin a duty of reasonable care, which duty included instituting reasonable hiring, screening, supervision, and retention of its police officer employees.

284.    At all times material hereto, the Town of Windermere assumed a duty to conduct a reasonable investigation into the background, driving, and criminal history of its police officer employees.

285.    At all times material hereto, the Town of Windermere knew or should have known that Griffen Hebel was unfit to use hobble restraints, to use taser devices, and to interact with persons with mental illness as part of his employment by the Town of Windermere, and that equipping Griffen Hebel with hobble restraints and taser devices and deploying him to calls for assistance for persons with mental illness was virtually certain to result in injury or serious harm.

286.    Defendant the Town of Windermere knew or in the exercise of reasonable care should have known that Griffen Hebel posed a grave threat to the physical and psychological well-being and safety of other persons in the foreseeable zone of risk, including Mr. Celestin.

287.    Defendant the Town of Windermere assigned Griffen Hebel to patrols that could foreseeably include the use of hobble restraints and taser devices and interactions with persons with mental illness, and deployed him to interact with Mr. Celestin, who the Town of Windermere knew was a person with mental illness.

288.    Upon information and belief, at the time of that assignment and deployment, the Town of Windermere, its employees, agents, or representatives knew or should have known that Defendant Griffen Hebel was not competent to use hobble restraints and taser devices or to interact with persons with mental illness.

289.    At all times material hereto, Defendant the Town of Windermere owed a duty to members of the public, including Mr. Celestin, to use reasonable care not to equip persons who are not competent to use hobble restraints and taser devices with such equipment, and not to deploy persons who are not competent to interact with persons with mental illness to calls involving persons with mental illness.

290.    Defendant the Town of Windermere breached the duty of care that it owed to Mr. Celestin and other members of the public when it equipped Defendant Griffen Hebel with hobble restraints and taser devices, when it assigned him to patrols that could foreseeably include interactions with mental illness, and when it deployed him to interact with Mr. Celestin.

291.    Defendant the Town of Windermere was negligent in its hiring, retention, and supervision and breached its duty to Mr. Celestin in all or more of the following ways:

      a.   failure to conduct effective investigations of the background, training and prior job performance of its applicants;

      b.   failure to contact references or prior employers of Defendant Griffen Hebel, which would have revealed incidents and a pattern of behavior demonstrating unfitness to

use hobble restraints and/or taser devices, and/or to interact with persons with mental illness;

c.   unreasonable hiring and retention of police officer employees, despite information it knew or should have known had it conducted a reasonable investigation of the background, training, and prior job performance of the subject individual;

d.   failure to adequately supervise Griffen Hebel, which would have prevented Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris from causing Mr. Celestin's death;

e.   failure to adequately train Griffen Hebel, which would have prevented Griffen Hebel from causing Mr. Celestin's death;

f.   failure to take prompt corrective action despite actual or constructive knowledge regarding the Town of Windermere's failure to perform the duties of care owed to persons who may be subjected to hobble restraints and taser devices, including Mr. Celestin, and to persons with mental illness, including Mr. Celestin; and

g.   other acts and omissions yet to be discovered.

292.   As a direct and proximate result of the Town of Windermere's breach of duty, Mr. Celestin suffered damages including but not limited to bodily injury which resulted in pain and suffering, disability, aggravation of a pre-existing condition, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages and loss of earning capacity, physical inconvenience, discomfort, loss of time, mental pain and suffering, embarrassment, humiliation, injuries to his reputation, and ultimately death.

WHEREFORE, PLAINTIFF demands judgment against the Town of Windermere for the damages outlined above, with costs, and any further relief as the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, ROSE MARIE CELESTIN, as Next of Kin and as Proposed Personal Representative of the Estate of JEAN SAMUEL CELESTIN, respectfully prays that:

a.  the Court enter judgment in favor of ROSE MARIE CELESTIN, as Next of Kin and as Proposed Personal Representative of the Estate of JEAN SAMUEL CELESTIN, on her claim(s) in an amount to be proved at trial;

b.  the Court enter an order awarding compensatory damages in an amount to be determined at trial;

c.  the Court enter an order awarding punitive damages against the Individual Defendants only in an amount to be determined at trial;

d.  ROSE MARIE CELESTIN, as Next of Kin and as Proposed Personal Representative of the Estate of JEAN SAMUEL CELESTIN, recover from Defendants its costs and expenses, including reasonable attorneys' fees incurred in pursuing this claim pursuant to 42 U.S.C. § 1988;

e.  The Estate of JEAN SAMUEL CELESTIN, recover damages including any and all incurred medical expenses, funeral and/or burial expenses as authorized by Florida's Wrongful Death Act, *Florida Statutes §§768 et seq.*

f.  The survivor(s) recover damages including loss of future support and services of her son, past pain and suffering, future pain and suffering, and all other damages recoverable by survivors pursuant to Florida's Wrongful Death Act, *Florida Statutes §§768 et seq.*

g.  This case be tried by a jury; and

51

h.   ROSE MARIE CELESTIN, as Next of Kin and as Proposed Personal Representative of the Estate of JEAN SAMUEL CELESTIN, recovers such other and further relief as the Court deems just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

Respectfully submitted this 6th day of April 2021.

/ Jeremy K.  Markman
JEREMY K.  MARKMAN, Esquire
Florida Bar No.:  0080594
KING & MARKMAN, P.A.
941 Lake Baldwin Lane, Ste.  101
Orlando, Florida 32814
Tel:    (407) 447-0848
Fax:    (407) 271-8999
markman@kingmarkman.com
*Attorney for Plaintiff*


EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:_____/s/_____
      Andrew G. Celli, Jr.*
      Jonathan S. Abady*
      Earl S. Ward*
      Andrew K. Jondahl*

600 Fifth Avenue, 10th Floor
New York, New York 10020
 (212) 763-5000
*Attorneys for Plaintiff*

* *Pro hac vice application forthcoming*

52

11948

Filing # 124425367 E-Filed 04/06/2021 04:00:45 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

   Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

   Respondents.

_____/

CASE NO.: 2021-ca-003570-o
DIVISION:

Date Received _____
Process Server, Name / I.D. 157 MF
Date Served 5/4/21 Time: 1103
Person Served Melanie Sibbitt
Title _____
m. [signature]

**SUMMONS**

THE STATE OF FLORIDA

  YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

  **CITY OF OCOEE**
  **150 N. Lakeshore Drive**
  **Ocoee, FL 34761**

  The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter. If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

  DATED this April 13, 2021.

Tiffany Moore Russell

**425 North Orange Ave.**
**Suite 350**
**Orlando, Florida 32801**

Clerk of Circuit Court

BY: /s/ Grace Katherine Uy
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration at the ORANGE County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within

two (2) working days of your receipt of this notice.  If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefónica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante)  Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

**IMPORTANT**

Des poursuites judiciaries ont ete enterprises contre vous.  Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous.  Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

Filing # 124425367 E-Filed 04/06/2021 04:00:45 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

      Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

      Respondents.

_____/

CASE NO.: 2021-ca-003570-o
DIVISION:

**SUMMONS**

THE STATE OF FLORIDA

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

      **TOWN OF WINDERMERE**
      **614 Main Street**
      **Windermere, FL 34786**

      The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter. If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

      DATED this April __13_, 2021.

Tiffany Moore Russell
425 North Orange Ave.
Suite 350
Orlando, Florida 32801



Clerk of Circuit Court

BY: _/s/ Grace Katherine Uy_____
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration at the Orange County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within

two (2) working days of your receipt of this notice.  If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada teléfonica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía teléfonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney."  (Demandante o Abogado del Demandante) Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

**IMPORTANT**

Des poursuites judiciaries ont ete enterprises contre vous.  Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous.  Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

Filing # 124425367 E-Filed 04/06/2021 04:00:45 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

      Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

      Respondents.

_____/

CASE NO.:
DIVISION:  2021-ca-003570-o

**SUMMONS**

THE STATE OF FLORIDA

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

**JOSHUA BODE**
**150 N. Lakeshore Drive**
**Ocoee, FL 34761**

     The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter. If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

     DATED this April 13 , 2021.

Tiffany Moore Russell

425 North Orange Ave.
Suite 350
Orlando, Florida 32801



Clerk of Circuit Court

BY: /s/ Grace Katherine Uy
_____
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration at the

Orange County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within two (2) working days of your receipt of this notice.  If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada teléfonica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante)  Jeremy K. Markman, Attorney at Law, Plaintiff´s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

## IMPORTANT

Des poursuites judiciaries ont ete enterprises contre vous.  Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous.  Jeremy K. Markman, Attorney at Law, Plaintiff´s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

Filing # 124425367 E-Filed 04/06/2021 04:00:45 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

       Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

       Respondents.

CASE NO.: 2021-ca-003570-o
DIVISION:

_____/

### SUMMONS

THE STATE OF FLORIDA

       YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

**CHRISTOPHER BONNER**
**150 N. Lakeshore Drive**
**Ocoee, FL 34761**

       The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter.  If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

       DATED this April 13 , 2021.

Tiffany Moore Russell

**425 North Orange Ave.**
**Suite 350**
**Orlando, Florida 32801**



Clerk of Circuit Court

/s/ Grace Katherine Uy
BY:_____
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact Court Administration at the

Orange County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within two (2) working days of your receipt of this notice.  If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada teléfonica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía teléfonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante)  Jeremy K. Markman, Attorney at Law, Plaintiff´s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

**IMPORTANT**

Des poursuites judiciaries ont ete enterprises contre vous.  Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous.  Jeremy K. Markman, Attorney at Law, Plaintiff´s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

Filing # 124425367 E-Filed 04/06/2021 04:00:45 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

      Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

      Respondents.

_____/

CASE NO.: 2021-ca-003570-o
DIVISION:

**SUMMONS**

THE STATE OF FLORIDA

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

**DOMINIC CHIUCHIARELLI**
**150 N. Lakeshore Drive**
**Ocoee, FL 34761**

     The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter. If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

     DATED this April 13 , 2021.

Tiffany Moore Russell
425 North Orange Ave.
Suite 350
Orlando, Florida 32801

Clerk of Circuit Court

/s/ Grace Katherine Uy
BY:_____
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration at the

Orange County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within two (2) working days of your receipt of this notice. If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada teléfonica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía teléfonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante) Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

## IMPORTANT

Des poursuites judiciaries ont ete enterprises contre vous. Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous. Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

   Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

   Respondents.

_____/

CASE NO.: 2021-ca-003570-o
DIVISION:

### SUMMONS

THE STATE OF FLORIDA

   YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

**BRIAN HARRIS**
**150 N. Lakeshore Drive**
**Ocoee, FL 34761**

   The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter. If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

   DATED this April ___13___, 2021.

Tiffany Moore Russell

**425 North Orange Ave.**
**Suite 350**
**Orlando, Florida 32801**



Clerk of Circuit Court

/s/ Grace Katherine Uy
BY:_____
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Court Administration at the

Orange County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within two (2) working days of your receipt of this notice.  If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada teléfonica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía teléfonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney."  (Demandante o Abogado del Demandante)  Jeremy K. Markman, Attorney at Law, Plaintiff´s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

## IMPORTANT

Des poursuites judiciaries ont ete enterprises contre vous.  Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous.  Jeremy K. Markman, Attorney at Law, Plaintiff´s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

Filing # 124425367 E-Filed 04/06/2021 04:00:45 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as
Next of Kin and Proposed Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

       Petitioner,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

       Respondents.

_____/

CASE NO.: 2021-ca-003570-o
DIVISION:

## SUMMONS

THE STATE OF FLORIDA

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action upon the Respondent:

      **GRIFFIN S. HEBEL**
      **620 Main Street**
      **Windermere, FL 34786**

      The Respondent is required to serve written defenses to the Complaint on: Jeremy K. Markman, Attorney at Law, Plaintiff's attorney, whose address is KING & MARKMAN, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848, within twenty (20) days after service of this Summons on that Respondent, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter.  If a Respondent fails to do so, a default will be entered against the Respondent for the relief demanded in the Complaint.

      DATED this April 13, 2021.

Tiffany Moore Russell

425 North Orange Ave.
Suite 350
Orlando, Florida 32801



Clerk of Circuit Court

BY: /s/ Grace Katherine Uy
_____
As Deputy Clerk

If you are a person with a disability who needs accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact Court Administration at the

Orange County Courthouse, 425 N. Orange Ave., Orlando, FL 32801, telephone (407) 836-2481, within two (2) working days of your receipt of this notice. If you are hearing or voice impaired, call 1-800-955-8771.

**\*\*Spanish and French versions attached hereto**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada teléfonica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres del las partes interesados en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser sacado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparece en la guía teléfonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante) Jeremy K. Markman, Attorney at Law, Plaintiff`s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

## IMPORTANT

Des poursuites judiciaries ont ete enterprises contre vous. Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous. Jeremy K. Markman, Attorney at Law, Plaintiff`s attorney, whose address is King & Markman, P.A., 941 Lake Baldwin Lane, Ste. 101, Orlando, Florida 32814, (407) 447-0848

**IN THE CIRCUIT COURT FOR ORANGE COUNTY,
FLORIDA                          PROBATE DIVISION**

**IN RE:  ESTATE OF**

**JEAN SAMUEL CELESTIN**

**Deceased.**

File No.  2021-CP-001072-O

Division  Probate

## ORDER APPOINTING PERSONAL REPRESENTATIVE
### (intestate – single)

On the petition of Rose Marie Celestin for administration of the estate of Jean Samuel

Celestin, deceased, the court finding that the decedent died on April 12, 2019, and that Rose

Marie Celestin is entitled to appointment as personal representative by reason of she is the

natural mother of the decedent and sole heir to his estate, and is qualified to be personal

representative, it is

ADJUDGED that Rose Marie Celestin is appointed personal representative of the estate

of the decedent, and that upon taking the prescribed oath, filing designation and acceptance of

resident agent, and filing bond in the sum of $0.00, letters of administration shall be issued.

ORDERED on April 30, 2021.

eSigned by Lisa T. Munyon  04/30/2021 16:21:45 Clq+5zAm

Lisa Munyon
Circuit Judge

Electronic Service List
Catherine Davey <catherine@daveylg.com>, <stephanie@daveylg.com>,
<guardianship@daveylg.com>

**IN THE CIRCUIT COURT FOR ORANGE COUNTY,
FLORIDA                              PROBATE DIVISION**

IN RE:  ESTATE OF

        File No.  2021-CP-001072-O

**JEAN SAMUEL CELESTIN**

        Division  Probate

  **Deceased.**

## LETTERS OF ADMINISTRATION
### (single personal representative)

TO ALL WHOM IT MAY CONCERN

  WHEREAS, Jean Samuel Celestin, a resident of Orange County, Florida, died on April

12, 2019, owning assets in the State of Florida, and

  WHEREAS, Rose Marie Celestin has been appointed personal representative of the estate

of the decedent and has performed all acts prerequisite to issuance of Letters of Administration

in the estate,

  NOW, THEREFORE, I, the undersigned circuit judge, declare Rose Marie Celestin duly

qualified under the laws of the State of Florida to act as personal representative of the estate of

Jean Samuel Celestin, deceased, with full power to administer the estate according to law; to ask,

demand, sue for, recover and receive the property of the decedent; to pay the debts of the

decedent as far as the assets of the estate will permit and the law directs; and to make distribution

of the estate according to law.

  ORDERED on April 30, 2021.

       eSigned by Lisa T. Munyon  04/30/2021 16:22:45 gDU0QFcg

       Lisa Munyon
       Circuit Judge

Electronic Service List
Catherine Davey <catherine@daveylg.com>, <stephanie@daveylg.com>,
<guardianship@daveylg.com>

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

ROSE MARIE CELESTIN, as Next of Kin
and Proposed Personal Representative of the
Estate of JEAN SAMUEL CELESTIN,
deceased,

        Plaintiff,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
Individually, Officer CHRISTOPHER
BONNER, individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

        Defendants.

Case No. 2021-CA-003570-O

_____/

**NOTICE OF APPEARANCE AND**
**DEISGNATION OF ELECTRONIC MAIL ADDRESSES**

PLEASE TAKE NOTICE that Frank M. Mari of the law firm of Bell & Roper, P.A.,
hereby files this notice of appearance as counsel on behalf of the Defendant Town of
Windermere and Defendant Officer Griffin Hebel, in the above-styled cause.

Pursuant to the Florida Supreme Court's mandate regarding service by electronic mail,
Florida Rule of Judicial Administration 2.516(b)(1), Service of Pleadings and Documents, the
undersigned designates as follows:

Primary E-Mail Address: fmari@bellroperlaw.com

Secondary E-Mail Address: ihaines@bellroperlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished
via the Florida Courts E-filing Portal on this 19th day of May, 2021 to:  Jeremy K. Markman,

1

Esquire, King & Markman, P.A., 941 Lake Baldwin Lane, Suite 101, Orlando, FL   32814 at
markman@kingmarkman.com

*/s/ Frank M. Mari*
Frank M. Mari, Esquire
Florida Bar No. 93243
Primary:  fmari@bellroperlaw.com
Secondary:  ihaines@bellroperlaw.com
Bell & Roper, P.A.
2707 E. Jefferson Street
Orlando, FL  32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Attorney for Defendant Town of Windermere and
Defendant Officer Griffin Hebel

2