UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROSE MARIE CELESTIN,

    Plaintiff,

v.                                                Case No. 6:21-cv-896-RBD-EJK

CITY OF OCOEE; OFFICER
JOSHUA BODE; OFFICER
CHRISTOPHER BONNER; OFFICER
DOMINIC CHIUCHIARELLI;
OFFICER BRIAN HARRIS; TOWN
OF WINDERMERE; and OFFICER
GRIFFIN HEBEL,

    Defendants.
_____

## ORDER

Before the Court are:

1. Defendant Town of Windermere's ("Windermere") Motion to Dismiss (Doc. 11 ("Motion"));

2. Notice Regarding Defendant Town of Windermere's Motion to Dismiss (Doc. 28); and

3. Plaintiff's Memorandum of Law in Opposition to Defendant Town of Windermere's Partial Motion to Dismiss (Doc. 37).

On review, Windermere's Motion is due to be granted in part and denied in part.

## BACKGROUND

This case involves the death of Jean Samuel Celestin, Plaintiff Rose Marie Celestin's son. (Doc. 1-1, ¶¶ 1, 9.) Jean Samuel had a history of mental illness and had been involuntarily committed. (*Id.* ¶ 3.) In April 2019, he experienced a mental health crisis, and his family called 911 for assistance. (*Id.*) Several Ocoee police officers and one Windermere officer responded. (*See id.* ¶¶ 4, 6.) Their interaction with Jean Samuel quickly escalated, and they tasered him and knocked him to the ground. (*See id.* ¶ 4.) The officers then placed Jean Samuel in a hobble restraint—also known as a hogtie. (*Id.* ¶ 6.) These restraints are known to cause death by asphyxiation, and individuals in a hobble should be turned off their stomach immediately. (*See id.* ¶¶ 6, 124.) The officers left Jean Samuel prone in the hogtie for nearly a full minute, and when they finally turned him on his side, he had no pulse and was not breathing. (*Id.* ¶ 7.) Still, the officers did not release him from the hogtie for nearly five minutes. (*Id.* ¶ 159.) The officers then refused to give Jean Samuel mouth-to-mouth resuscitation in the next ten minutes before the emergency medical technicians arrived. (*Id.* ¶ 162.) Jean Samuel died from sudden cardiorespiratory arrest before his body was transported to the hospital. (*See id.* ¶¶ 8, 175.)

So Plaintiff, as Jean Samuel's next of kin, brought these claims: (1) a 42 U.S.C. § 1983 claim against the officers; (2) a § 1983 claim against Ocoee and Windermere;

2

(3) an Americans with Disabilities Act ("ADA") claim against Ocoee and Windermere; (4) a Rehabilitation Act ("Rehab Act") claim against Ocoee and Windermere; (5) a wrongful death negligence claim against Ocoee and Windermere; (6) battery against Ocoee; (7) battery against Windermere; (8) battery against the officers; (9) assault against Ocoee; (10) assault against Windermere; (11) assault against the officers; (12) negligent hiring, retention, and supervision against Ocoee; and (13) negligent hiring, retention, and supervision against Windermere. (Doc. 1-1.)

Ocoee and the officers answered. (Docs. 10, 12–16.) Windermere, though, partially moved to dismiss the ADA and Rehab Act claims (Counts III and IV) and the negligence-based claims (Counts V and XIII).[1] (Doc. 11.) Plaintiff did not oppose dismissal of the ADA and Rehab Act claims, so only the negligence claims in Counts V and XIII are at issue. (Docs. 28, 37.) The matter is now ripe.

## STANDARDS

A plaintiff must plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss under Rule 12(b)(6), the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] Windermere did not move to dismiss Counts II, VII, and X against it. (*See* Doc. 11.)

570 (2007). The Court must accept the factual allegations as true and construe them "in the light most favorable" to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). But this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So a pleading that offers mere "labels and conclusions" is insufficient. *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I.   Counts V and XIII – "Negligent Training"[2]

Count V alleges wrongful death negligence and Count XIII alleges negligent hiring, retention, and supervision. (Doc. 1-1, ¶¶ 210–21, 276–92.) Windermere argues these Counts should be dismissed to the extent they improperly challenge Windermere's policy decisions on how to train its officers—decisions for which Windermere argues it has sovereign immunity. (Doc. 11, pp. 8–10.) Plaintiff counters that neither of those Counts is styled as a negligent training claim. (Doc. 37, pp. 14–15.) True, but Plaintiff ignores the actual allegations in the claims, which do explicitly challenge Windermere's training decisions. (Doc. 1-1, ¶¶ 216(d)–(i), 291(e).) So the Court must determine whether Windermere is immune from suit for these decisions.

Under Florida law, municipalities are immune from tort liability where their actions are "discretionary," meaning they "involve[] an exercise of executive or

---

[2] These Counts are not actually styled as "negligent training" claims, as discussed *infra*.

4

legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). But sovereign immunity is waived where the challenged actions are "operational," meaning they are "not necessary to or inherent in policy or planning, [but] merely reflect[] a secondary decision as to how those policies or plans will be implemented." *Id.* While a municipality's policy decisions on what content to put in its training programs are discretionary and thus immune, how the entity implements those training programs is operational. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). So to state a viable negligent training claim, the plaintiff must allege that the municipality "was negligent in the implementation or operation of a training program already in effect." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-cv-438, 2015 WL 3454274, at *8 (M.D. Fla. May 29, 2015).

The Court takes each training allegation in turn. First, Count V includes a long paragraph alleging that Windermere failed to adopt appropriate training policies on hobble restraints, people with mental illness, and the like, and that it adopted other unsafe policies on the same. (Doc. 1-1, ¶ 216(d)–(j).) On their face, these allegations concern Windermere's decisions on whether to adopt policies on certain topics and the content of those policies, not the negligent implementation of pre-existing policies in any specific instance. So the challenged decisions in this

paragraph are discretionary and thus immune.[3] *See, e.g.*, *Simmons*, 2015 WL 3454274, at *8 (finding negligent training claim inadequate where it failed to allege the existence of policies already in effect); *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1118–19 (11th Cir. 2005) (finding negligent training claim inadequate where it alleged that prison's policies about suicide prevention among inmates were insufficient). This portion of the Motion is due to be granted.

Second, one allegation in Count XIII challenges Windermere's failure to adequately train Officer Hebel (the only officer Defendant who worked for Windermere, rather than Ocoee). (Doc. 1-1, ¶¶ 11–14, 16, 291(e).) Unlike in Count V, this allegation relates to implementing a particular policy with a particular person. (*Id.* ¶ 291(e).) And the Complaint supports this legal allegation with factual ones: Windermere requires mental health intervention training and Hebel did not receive adequate training. (*Id.* ¶¶ 34, 38–39.) As this portion of Count XIII focuses on Windermere's negligence in implementing its mental health intervention training with Hebel specifically, rather than Windermere's choice as to whether to train and what to include in training generally, this allegation is actionable. *See Vasconez v. Hansell*, 871 F. Supp. 2d 1339, 1344 (M.D. Fla. 2012) (finding negligent training claim adequate where it challenged training provided

---

[3] Windermere also challenged the use of the word "design" in this paragraph for the same reason. (Doc. 11, p. 10.) Plaintiff did not oppose striking that word from the paragraph. (Doc. 37, p. 2 n.1.)

to specific officers). This portion of the Motion is due to be denied.

## II. Count XIII – Negligent Hiring

Windermere also challenges the negligent hiring portion of Count XIII,[4] again arguing it is entitled to sovereign immunity for its discretionary decisions on hiring policies. (Doc. 11, pp. 10–12.) Plaintiff argues that, like the training allegation in Count XIII, this portion of the claim is directed to Windermere's negligence in hiring Officer Hebel specifically, not Windermere's hiring policies generally. (Doc. 37, pp. 8–13.) The Court agrees with Plaintiff.

Like negligent training, a municipality is immune from liability for negligent hiring if the challenge concerns the content of hiring policies, but it is not immune for operational hiring decisions. *See Hazleton v. City of Orlando*, No. 6:10-cv-342, 2011 WL 13175527, at *15–16 (M.D. Fla. Oct. 19, 2011), *aff'd sub nom. Hazleton v. Trinidad*, 488 F. App'x 349 (11th Cir. 2012). To establish a negligent hiring claim, the plaintiff must show:

> [T]he employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*Id.* at *15 (citation and internal quotation marks omitted).

---

[4] Windermere does not challenge the negligent retention or supervision portions of this claim. (*See* Doc. 11.)

Here, the Complaint meets that standard because it alleges that Windermere had a duty to investigate its officers' backgrounds, Officer Hebel had a past "pattern of behavior demonstrating unfitness to use hobble restraints . . . [and] to interact with persons with mental illness," and Windermere knew or should have known that Officer Hebel posed a "grave threat" to safety. (Doc. 1-1, ¶¶ 280, 284–86, 291(b).) The gist of this claim is that Windermere was negligent in failing to adequately investigate Officer Hebel's background before hiring him, not Windermere's hiring policies generally,[5] so sovereign immunity does not apply as pled. *See Hemmings v. Jenne*, No. 10-61126, 2010 WL 4005333, at *7 (S.D. Fla. Oct. 12, 2010). *See generally Washington v. City of Waldo*, No. 1:15-cv-73, 2016 WL 7666121, at *12 (N.D. Fla. Nov. 1, 2016). This portion of the Motion is due to be denied.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Windermere's Motion (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**:

    a. The Motion is **GRANTED** as unopposed as to Counts III and IV, the ADA and Rehab Act claims, which are **DISMISSED**

---

[5] As Plaintiff acknowledges, one subparagraph in this claim does allege that Windermere failed to conduct effective investigations into the background of "its applicants" generally, but the remaining subparagraphs of that section reference Officer Hebel specifically. (*See* Doc. 1-1, ¶ 291(a).) Plaintiff asserts this allegation was a typographical error. (Doc. 37, p. 9 n.3.) Regardless of the error, the claim as a whole focuses on Officer Hebel.

    **WITHOUT PREJUDICE** against Windermere. (Doc. 1-1, ¶¶ 192–209.)

  b. The Motion is **GRANTED** as to the portion of Count V that alleges Windermere failed to adopt certain policies and adopted other unsafe policies, which portion of Count V is **DISMISSED WITHOUT PREJUDICE** against Windermere. (*Id.* ¶ 216(d)–(j).)

  c. The Motion is **DENIED** as to the portion of Count XIII that alleges Windermere negligently implemented its training policies as to Officer Hebel. (*Id.* ¶ 291(e).)

  d. The Motion is **DENIED** as to the portion of Count XIII that alleges Windermere negligently hired Officer Hebel. (*Id.* ¶ 291(b).)

  e. In all other respects, the Motion is **DENIED**.

2. By **Friday, November 12, 2021**, Plaintiff may file a second amended complaint.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 28, 2021.

ROY B. DALTON JR.
United States District Judge

10