UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO: 6:21-cv-00896-RBD-EJK

ROSE MARIE CELESTIN, as
Next of Kin and Personal
Representative of the Estate of JEAN
SAMUEL CELESTIN, deceased,

      Plaintiff,

v.

CITY OF OCOEE, Officer JOSHUA BODE,
individually, Officer CHRISTOPHER BONNER,
individually, Officer DOMINIC
CHIUCHIARELLI, individually, Officer
BRIAN HARRIS, individually, TOWN OF
WINDERMERE, and Officer GRIFFIN
HEBEL, individually,

      Defendants.
_____/

## PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Plaintiff, Rose Marie Celestin, as Next of Kin and as Personal Representative of the Estate of Jean Samuel Celestin, deceased, ("Plaintiff"), by and through undersigned counsel, hereby moves the Court for entry of a protective order to govern the use and dissemination of sensitive medical information and autopsy photographs, for good cause as set forth in the memorandum of law below.

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

Pursuant to M.D. Fla. Local R. 3.01(g), counsel for Plaintiff has conferred in good faith by both telephone and email with counsel for Defendants City of Ocoee, Town of Windermere, and Griffin Hebel in an attempt to enter an out-of-court confidentiality agreement or to prepare a

joint motion for a protective order, but the conferrals were unsuccessful. Counsel for Defendants Joshua Bode, Christopher Bonner, Dominic Chiuchiarelli, and Brian Harris indicated that they would join the telephone conferral but did not, and they have not provided their position on this issue by email.

## MEMORANDUM OF LAW

**I.     PRELIMINARY STATEMENT**

Plaintiff has agreed to permit broad discovery in this matter, including the production of medical records and autopsy photographs of her deceased son that are in her possession. She has not sought to quash sweeping third-party subpoenas for medical records, even though the records sought have no genuine relevance to any claim or defense in this matter. Instead, she has made only the common and uncontroversial request that Defendants agree not to *publicly* disclose these sensitive materials (other than as ordered by the Court) and agree to destroy them at the end of litigation. Defendants have flatly refused these routine and reasonable requests. They have refused to enter an out-of-court agreement on consent that would protect the privacy of these materials while giving all parties an opportunity to petition the Court for expanded disclosure of them as necessary for the case. And they have wholly objected to the entry of a protective order governing this quintessentially confidential material.

Plaintiff has an interest in keeping medical information and autopsy photographs confidential during the course of this litigation and would be harmed if it were disclosed to non-parties and the public at large. Defendants, who would have access to the information in discovery and would have the ability to present it to the Court, would not be prejudiced by protection of this material. For these reasons, as set forth in more detail below, Plaintiff

respectfully requests that the Court enter a protective order governing the use and dissemination of medical information and autopsy photographs.

II.     **BACKGROUND**

    A.     **Jean Samuel Celestin Dies at the Hands of Ocoee and Windermere Officers**

Plaintiff's decedent Jean Samuel Celestin died at the hands of Ocoee and Windermere police officers on April 11, 2019. On the night of his death, Mr. Celestin's family called 911 for help while he was in an acute mental health crisis. *See* Amended Complaint, ECF No. 1-1 ("Complaint" or "Compl.") ¶¶ 1, 3, 28, 44-48, 49-51. The precise details of the interaction that led to Mr. Celestin's death are set forth in the Amended Complaint. *Id.* ¶¶ 28-177. The medical examiner ruled that he died of sudden cardiorespiratory arrest during law enforcement subdual and restraint, and ruled his death a homicide. *Id.* ¶ 176. Mr. Celestin had a history of mental illness for which he had long been in treatment. *Id.* ¶¶ 21-27.

    B.     **Defendants' Broad Discovery Requests and Subpoenas**

Given the broad scope of the discovery sought by Defendants and their efforts to obtain sensitive medical records, a protective order is necessary to govern the use and dissemination of the material that Defendants obtain.

From June 30, 2021 through September 20, 2021, Defendants served various discovery requests on Plaintiff that call for medical information and autopsy photographs, and they served notices of production from non-parties, attaching subpoenas that call for the production of documents that include medical information. *See* Nov. 1, 2021 Decl. of Andrew G. Celli, Jr. ("Celli Decl.") Exs. 1-7.

These discovery requests and subpoenas, which are excerpted in relevant part below, collectively call for medical information not only about Plaintiff's decedent, Jean Samuel Celestin, but about Plaintiff Rose Marie Celestin, M.D., herself, and even her non-party

daughter, Joanne Celestin, who was a witness to some of the events of April 11, 2019. Plaintiff is working in good faith with Defendants to narrow the scope of some of these discovery requests, but, notwithstanding the breadth of the requests and their dubious-at-best relevance to the case, Plaintiff, through her counsel, has generally agreed to permit broad discovery into Mr. Celestin's medical history, and even into certain parts of her own medical history. Most notably, Plaintiff has not moved to quash any of the subpoenas that call for *all* of Mr. Celestin's medical records from various medical providers, without any time limitation, and without any regard to whether the records are relevant to the matters at issue in this case. Plaintiff also has not moved to quash the subpoena to City of Ocoee Fire Rescue seeking "[a]ny and all documents of any nature" regarding Plaintiff's decedent Mr. Celestin, Plaintiff herself, or non-party Joanne Celestin, without any time limitation, and without any regard to whether the records are relevant to Mr. Celestin's death at the hands of police in April 2019.

Rather than engage in burdensome motion practice regarding the scope of those subpoenas, Plaintiff here seeks the far more efficient path of permitting the discovery to occur so every party can be satisfied they have the information they need, while ensuring that protections are in place to prevent the improper disclosure of this sensitive information and ensuring that it will be destroyed at the conclusion of the litigation.

The relevant discovery requests and subpoenas are excerpted below:

- June 30, 2021 Requests for Production from Defendant City of Ocoee (Ex. 1)

    o Request No. 4: "The complete autopsy report of the deceased, Jean Samuel Celestin, including but not limited to photographs, blood analysis, chemical analysis, and any other documents contained in the complete autopsy report."

    o Request No. 5: "Any and all medical reports, opinions or other written memoranda from doctors, nurses, other medical practitioners, or expert witnesses containing information regarding any and all care and treatment rendered to the decedent, Jean Samuel Celestin, during the 10 years prior to his death."

- Request No. 6: "Any and all hospital records concerning any and all hospitalizations of the deceased, Jean Samuel Celestin, during the five (5) years prior to his death."

- Request No. 7: "Any and all records concerning the psychiatric hospitalization of the deceased, Jean Samuel Celestin, from January 1, 2013, through April 11, 2019."

- Request No. 14: "Any and all reports, opinions, or other written memoranda from any and all psychiatrists, psychologists, psychiatric social workers, psychiatric nurses, or mental health counselors reflecting any and all care, evaluation, and treatment rendered to the deceased, Jean Samuel Celestin, in the five (5) years prior to his death."

- Request No. 15: "Any and all records reflecting any and all medication prescribed to Jean Samuel Celestin from January 1, 2015, to the date of his death."

- June 30, 2021 Interrogatories from Defendant City of Ocoee (Ex. 2)

  - Interrogatory No. 4: "If decedent, Jean Samuel Celestin had any accidents, illnesses, or diseases or disabilities within the five years prior to the date of the incidents at issue in this action, please state the nature of each accident, illness, disease, or disability, when and where each was sustained or suffered, and if any accident, illness, or injury had any permanent effect on the decedent, state which accident, illness, injury, or disability had such permanent effect, describing how each was manifested."

  - Interrogatory No. 5: "Please state the names, business addresses, and business telephone numbers of each and every health care provider, including mental health care, who provided care, treatment, or evaluation to the decedent, Jean Samuel Celestin within the 10 years immediately preceding his death, including but not limited to, the name and address of decedent's family physician."

  - Interrogatory No. 6: "Please state the name and address of any hospital, sanitarium, clinic, or substance abuse center in which the decedent, Jean Samuel Celestin received medical or mental health care, advice, or treatment within the five years immediately preceding his death."

  - Interrogatory No. 7: "Describe the names and quantity of each type of drug, tranquilizer, sedative, or other medication taken or used by the decedent, Jean Samuel Celestin during the last five years of his life, specifying the frequency of use and the purpose of use."

- August 12, 2021 Interrogatories from Defendant Town of Windermere (Ex. 3)

    o Interrogatory No. 2: "If you have had any accidents, illnesses, or diseases or disabilities from July 1, 2011 to present, state the nature of each accident, illness, disease, or disability, when and where each was sustained or suffered, and if any accident, illness, or injury had any permanent effect on the you, state which accident, illness, injury, or disability had such permanent effect, describing how each was manifested."

    o Interrogatory No. 3: "Please state the names, business addresses, and business telephone numbers of each and every health care provider, including mental health care, who provided care, treatment, or evaluation to you within the past 10 years, including but not limited to, the name and address of your primary care physician(s)."

    o Interrogatory No. 4: "Describe the names and quantity of each type of drug, tranquilizer, sedative, or other medication taken or used by you during the last ten years, specifying the frequency of use and the purpose of use."

    o Interrogatory No. 5: "Describe in detail each instance in which Jean Samuel Celestin was sought to be admitted, examined, or detained pursuant to the Baker Act and/or Marchman Act and for each such instance, state the date; name of each individual involved; name of each law enforcement agency involved; name each healthcare provider involved; circumstances for seeking admission, examination, or detention; the case number and forum of each associated judicial proceeding; and names of all individuals involved in seeking admission, examination, or detention."

- September 7, 2021 Notice of Production from Non-Party ("NPNP") from Defendant City of Ocoee (Ex. 4)

    o Subpoena to City of Ocoee Fire Rescue, seeking "any and all records, including but not limited to, reports, examinations, doctors' notes, diagrams, correspondence, telephone messages, memoranda and all documents received or reviewed by the City of Ocoee Fire Rescue Department relating to" Jean Samuel Celestin, Rose Marie Anite Celestin, and Joanne Celestin Grace, and various other documents concerning them, as well as any and all documents concerning any services to rendered to any individuals at Plaintiff's address.

    o Subpoenas to Aspire Health Partners, Inc. and Health Central Hospital seeking any and all medical, billing, and radiology records concerning Jean Samuel Celestin.

- September 14, 2021 Interrogatories from Defendant Joshua Bode (Ex. 5)

    o Interrogatory No. 2: "For any alleged survivor making a claim, please state the name and addresses for any mental health providers, counselors, or therapists

   that each survivor has seen or treated with since the date of Jean Samuel Celestin's death, or during the 10 years prior to his death."

- Interrogatory No. 3: "For any alleged survivor making a claim, please state any health or medical condition, disease, or illness for which any survivor has been examined or treated for during the past (10) years, as well as the name, address, and dates of examination or treatment."

- Interrogatory No. 4: "In the 10 years prior to his death, was the decedent, Jean Samuel Celestin, ever committed, assessed, evaluated, treated, hospitalized, provided with services of any kind, or subjected to legal proceedings pursuant to the Florida Baker Act or Marchman Act? If so, state as to each instance, the date, location, and nature of the Baker Act or Marchman Act proceeding."

- September 20, 2021 Requests for Production from Defendant Town of Windermere (Ex. 6)

    - Request No. 1: "Any and all documents related to Baker Act proceedings involving Jean Samuel Celestin."

- September 20, 2021 Notice of Production from Non-Party ("NPNP") from Defendant Town of Windermere (Ex. 7)

    - Subpoena to Orange County Clerk of Court calling for "All records regarding Jean Samuel Celestin . . . including without limitation Baker Act proceedings."

### C.  Plaintiff's Attempts to Avoid Judicial Intervention

Plaintiff made multiple attempts to resolve this dispute on mutually agreeable terms because discovery "is intended to operate with minimal judicial supervision." *Jacobs v. Sunbelt Rentals, Inc*, No. 6:09 Civ. 1733, 2010 WL 11626584, at *1 (M.D. Fla. Apr. 26, 2010). However, Plaintiff's good-faith efforts have proven unsuccessful, because Defendants asserted that they would not enter *any* confidentiality agreement, regardless of the terms, and that they would oppose *any* protective order, regardless of its scope.

On August 27, 2021, in anticipation of her first production, Plaintiff's counsel sent Defendants' counsel a draft proposed confidentiality agreement to govern confidential material exchanged in discovery. *See* Celli Decl. Ex. 8 at 13-14. Twelve days later, on September 8,

2021, counsel for Defendants Ocoee, Windermere, and Hebel responded that they could not execute the agreement and asked for Plaintiff's counsel's availability to confer. *Id.* at 12-13. Plaintiff's counsel responded the following day, and the parties conferred by telephone on September 15, 2021.[1]  *Id.* at 5-11.

After the conferral, in an effort to resolve the parties' dispute and avoid motion practice, Plaintiff's counsel proposed an agreement limited in scope to medical records and autopsy photographs. *Id.* at 5. On October 5, 2021, counsel for Defendants Ocoee, Windermere, and Hebel responded that they would not execute even a limited agreement, but they did not provide the basis for this position. *Id.* at 4. The same day, Plaintiff's counsel responded to offer a compromise position. Plaintiff's counsel assumed that Defendants' counsel's position was based on a concern that an out-of-court agreement may conflict with Ocoee and Windermere's obligations under Florida's Public Records Law, and asked whether Ocoee and Windermere were prepared to join a motion for a protective order governing medical records and autopsy photographs, or to take no position on a motion filed by Plaintiff. *Id.* at 3. Defendants' counsel did not respond. Plaintiff's counsel followed up again on October 18, but still did not receive a response. *Id.* at 2. In a final effort to avoid the need for a contested motion before the Court, Plaintiff's counsel followed up once again on October 26, 2021. *Id.* at 1-2. Counsel for Defendants Ocoee, Windermere, and Hebel responded that they object to a protective order. *Id.* at 1. This motion followed.

### III.  ARGUMENT

The sensitive medical information and autopsy photographs exchanged in discovery in this case should receive the routine confidential treatment generally provided to such records in

---

[1] As explained above, although counsel for Defendants Bode, Bonner, Chiuchiarelli, and Harris indicated an interest and availability to confer, *see* Celli Decl. Ex. 8, at 6-8, they did not join the telephone conference.

litigation. In this district, "parties routinely enter into confidentiality agreements that govern the handling of confidential information throughout the discovery process." *Wyndham Hotels & Resorts, LLC v. Leisure Getaways, Inc.*, No. 6:17 Civ. 501, 2017 WL 10059023, at *3 (M.D. Fla. Oct. 25, 2017). When the parties are unable to come to agreement regarding the handling of such information, "Fed. R. Civ. P. 26(c) permits a court to enter a protective order 'for good cause.'" *Kristoff-Rampata v. Publix Super Markets, Inc.*, No. 3:15 Civ. 1324, 2016 WL 11431488, at *2 (M.D. Fla. Sept. 9, 2016) (cleaned up). Although "good cause" is difficult to define, "it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

A.  **There Is Good Cause to Protect Medical Records and Autopsy Photographs**

Plaintiff's "strong privacy interest in [her and her son's] medical information cannot be reasonably disputed." *Carbiener v. Lender Processing Servs., Inc., etc.*, No. 3:13 Civ. 970, 2015 WL 12835680, at *2 (M.D. Fla. Mar. 6, 2015) (collecting cases in consideration of a motion to seal). In the attached affidavit, Plaintiff explains the reasons that the disclosure to non-parties of medical information and autopsy photographs exchanged in this case would cause her harm and invade her and her family's privacy. *See generally* Oct. 29, 2021 Aff. of Plaintiff Rose Marie Celestin.

As an initial matter, Plaintiff and her family deeply value their privacy and do not discuss their medical issues publicly. *Id.* ¶ 3. Although they have publicly disclosed the fact that Mr. Celestin was diagnosed with mental illness and the nature of that diagnosis, they have never publicly released his medical records or provided details about his conditions, and they certainly have not disclosed their *own* medical information, because doing so would be an invasion of privacy and would cause them profound embarrassment. *Id.* ¶¶ 5-9. In addition, Plaintiff has not viewed the autopsy photographs, which include highly sensitive photographs of her son, nude,

after his death; she does not intend to, because doing so would cause her profound trauma, and there is no reason that anyone beyond the lawyers, parties, and expert witnesses in this case, needs to view these photographs, short of trial.  *Id.* ¶¶ 10-12.

Courts in this Circuit routinely recognize—and issue orders to prevent—precisely the type of harm Plaintiff will suffer if the medical information and autopsy photographs are not given the protection of a court order.  *See, e.g.*, *Publix Super Markets*, 2016 WL 11431488, at *3 (collecting cases for the proposition that "[p]rotective orders often protect . . . sensitive information, including human resources information, personnel information, *medical records*, and personal financial records" (emphasis added)); *cf. Nathai v. Fla. Detroit Diesel-Allison, Inc.*, No. 3:09 Civ. 1-J-20HTS, 2009 WL 10669903, at *1 (M.D. Fla. Oct. 22, 2009) (denying motion for a protective order because "[n]o indication [was] given that the papers contain[ed] sensitive information, such as '. . . medical information'" (quoting *Barrington v. Mortgage IT, Inc.*, No. 07 Civ.  61304, 2007 WL 4370647, at *2 (S.D. Fla. Dec. 10, 2007))).

Where medical records are produced in the course of discovery, protective orders frequently require that they "not be disclosed to third parties who are not involved in this litigation, unless good cause is shown."  *See, e.g.*, *Sheets v. Sorrento Villas, Section 5, Ass'n, Inc.*, No. 8:15 Civ. 1674, 2016 WL 11493318, at *4 (M.D. Fla. May 9, 2016).  This standard and efficient remedy is appropriate here.  Indeed, "[p]rotective orders preventing the parties 'from using any confidential information obtained during discovery except as part of the litigation' and 'whereby the producing party designates the document confidential and the court is only involved if a party objects' have been upheld."  *Publix Super Markets*, 2016 WL 11431488, at *2 (quoting *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 90, 92 (11th Cir. 1989)).  The

medical records for which Plaintiff seeks protection warrant such a "blanket designation of confidentiality," *id.* at *3, which is what Plaintiff seeks here.

**B.     Relief Requested**

As set forth in more detail below, Plaintiff requests that the Court enter a protective order that is limited in scope to medical information and autopsy photographs ("Confidential Information") and that: limits use of Confidential Information to this matter; limits disclosure to most non-parties, but permits disclosure to parties and their counsel, employees assisting in the litigation, consultants and experts, witnesses, and the Court (including all Court staff and the jury); provides mechanisms for resolution of designation disputes and for submitting Confidential Information to the Court; and requires destruction of Confidential Information at the conclusion of the litigation.

These terms are designed to ensure the efficient management of a limited set of Confidential Information without imposing any burden on either party. The Court's entry of an order with these or similar terms will therefore "save the parties time and expense and promote the 'just, speedy, and inexpensive determination' of this case as required by Federal Rule of Civil Procedure 1." *Publix Super Markets*, 2016 WL 11431488, at *2 (quoting Fed. R. Civ. P. 1).

Specifically, Plaintiff requests that the Court enter a protective order with the following parameters:

1. The following restrictions and procedures shall apply to documents, testimony, and information produced, given, or disclosed by Plaintiff and Defendants, their officers, directors, corporate parents, subsidiaries, and affiliates, as well as by third parties, in this action;

2. Counsel for any party may designate any document, information contained in a document, information revealed in an interrogatory response or information revealed during a deposition as confidential only if such document or information includes medical information and/or autopsy photographs. Information and

    documents designated by a party as confidential will be stamped "CONFIDENTIAL." "Confidential" information or documents may be referred to collectively as "Confidential Information."

3. Unless ordered by the Court, or otherwise provided for herein, the Confidential Information disclosed will be held and used by the person receiving such information solely for use in connection with the above-captioned action.

4. In the event a party challenges another party's confidential designation, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may then seek resolution by the Court. Nothing in this Order shall be construed as affecting the right of any party to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and Court rules.

5. Confidential Information shall not be disclosed to any person, except:

    a. The requesting party and counsel, including in-house counsel;

    b. Counsel's employees assigned to and necessary to assist in the litigation;

    c. Consultants or experts assisting in the prosecution or defense of the matter, to the extent deemed necessary by counsel;

    d. Any people from whom testimony is taken or is to be taken in these actions, except that they may only be shown that Confidential Information during and in preparation for their testimony and may not retain the Confidential Information; and

    e. The Court (including any clerks, stenographers, or other people having access to any Confidential Information by virtue of their positions with the Court) or the jury at trial or as exhibits to motions.

6. Prior to disclosing or displaying Confidential Information to any person, as authorized above, counsel shall:

    a. inform the person of the confidential nature of the information or documents; and

    b. inform the person that use of the information or documents for any purpose other than this litigation and disclosure of the information to persons other than those listed above is prohibited.

7. The disclosure of a document or information without designating it as "Confidential" shall not constitute a waiver of the right to designate such document or information as Confidential Information provided that the material is designated pursuant to the procedures set forth herein no later than fourteen days after the close of discovery or fourteen days after the document or information is produced,

      whichever occurs later. If so designated, the document or information shall thenceforth be treated as Confidential Information subject to all the terms detailed herein.

8.     A party seeking to file Confidential Information that has been designated "CONFIDENTIAL" by another party shall do so according to the procedure set forth in Local Rule 1.11(d).

9.     At the conclusion of litigation, all Confidential Information and any copies thereof shall be promptly (and in no event later than thirty days after settlement or entry of final judgment no longer subject to appeal) destroyed, except that the parties' counsel shall be permitted to retain their working files on the condition that those files will remain confidential.

10.     The foregoing is entirely without prejudice to the right of any party to apply to the Court for any order relating to Confidential Information; or to object to the production of documents or information; or to apply to the Court for an order compelling production of documents or information. Any violation of these terms may result in the Court imposing sanctions.

### C.     A Protective Order Will Not Prejudice Defendants

Because Plaintiff has made a showing of good cause for protection, the burden shifts to the Defendants to show why relief should still not be granted. *Loc. Access, LLC v. Peerless Network, Inc.*, No. 6:17 Civ. 236, 2017 WL 7343156, at *5 (M.D. Fla. July 27, 2017). Defendants cannot meet this burden, because they cannot identify any valid harm or prejudice they will suffer if the Court enters a protective order with the terms proposed by Plaintiff above.

The mere prevention of "unauthorized and potentially harmful disclosure to those outside this case while allowing use within this case," which is what Plaintiff proposes here, causes "no real detriment" to Defendants. *Publix Super Markets*, 2016 WL 11431488, at *3 (M.D. Fla. Sept. 9, 2016).

Both Ocoee and Windermere have claimed that, if they receive a request pursuant to Florida's Public Records Law, they would be obligated to disclose the discovery materials exchanged in this case. They further assert that an out-of-court confidentiality agreement may conflict with their obligations under Florida's Public Records Law.

Defendants are wrong.  First, and most importantly, a federal court order—entered on consent or otherwise—overrides Florida law as a matter of the Supremacy Clause.  *See* U.S. Const. art. VI, cl. 2.  "[E]ven if it were Florida law that discovery materials arising from this litigation are public records," if this Court were to find good cause and enter a protective order, the order would "supersede Florida law pursuant to the Supremacy Clause."  *CSX Transp., Inc. v. Fla. Dep't of Revenue*, No. 4:06 Civ. 342, 2006 WL 8443347, at *6 (N.D. Fla. Dec. 26, 2006); *see also Mata Chorwadi, Inc. v. City of Boynton Beach*, No. 9:19 Civ. 81069, 2020 WL 2516979, at *3 (S.D. Fla. May 18, 2020) (collecting cases supporting the proposition that "a federal court order issued pursuant to Rule 26 to prevent the disclosure of documents renders any state statute or regulation to the contrary void pursuant to the Supremacy Clause").

Second, at the very least, Florida law expressly excludes from open-records disclosure autopsy photographs of the sort for which Plaintiff seeks protection for.  *See* Fla. Stat. § 406.135(1).

In an effort to narrow the scope of the dispute and avoid burdening this Court with a disputed motion, Plaintiff's counsel proposed that the parties jointly move this Court for a protective order limited in scope solely to medical information and autopsy photographs.  *See* Celli Decl. Ex. 8 at 1-2.  On October 26, Defense Counsel responded that they also objected to *any* protective order at all.  *Id.* at 1.  What seems clear is that Defendants have in mind uses for highly sensitive discovery materials received in this case that go far beyond ordinary litigation purposes related to the case.  Such *mis*use of such materials ought not be allowed.

A protective order along the lines proposed herein appropriately balances Defendants' right to discovery against the strong, well-established privacy interests that exist in sensitive medical information and autopsy photographss.  Plaintiff understands that, at trial, some of these

materials may be deemed relevant and become public. She is prepared to cross that bridge if and when it becomes necessary. For now, however, as Defendants pursue their dragnet discovery approach, no valid reason has been offered, and none exists, for this Court not to protect the private medical information of Plaintiff and her family with an appropriately tailored and routine protective order.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a protective order to govern the use and dissemination of medical information and autopsy photographs, as set forth *supra* in Section III.B.

Dated: November 1, 2021
Orlando, Florida

/s/ Jeremy K. Markman
JEREMY K. MARKMAN, Esquire
Florida Bar No.: 0080594
KING & MARKMAN, P.A.
941 Lake Baldwin Lane, Ste. 101
Orlando, Florida 32814
Tel:  (407) 447-0848
Fax:  (407) 271-8999
markman@kingmarkman.com
cuwabera@kingmarkman.com
*Attorney for Plaintiff*

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:_____/s/_____
Andrew G. Celli, Jr.*
Jonathan S. Abady*
Earl S. Ward*
Andrew K. Jondahl*

600 Fifth Avenue, 10th Floor
New York, New York 10020

(212) 763-5000
*Attorneys for Plaintiff*

\* *Admitted pro hac vice*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 1, 2021, I filed the foregoing with the court using the CM/ECF system, which will send a notice of electronic filing to:

Benjamin Lawrence Bedard
Stephanie Michelle Weisbrod
Roberts, Reynolds, Bedard & Tuzzio, PA
470 Columbia Dr, Ste 101C
West Palm Beach, FL 33409
(561) 688-6560
(561) 688-2343 (fax)
bbedard@rrbpa.com
skaufer@rrbpa.com
Attorneys for Officer Brian Harris, Officer Christopher Bonner, Officer Dominic Chiuchiarelli, and Officer Joshua Bode

Gail C. Bradford
Dean, Ringers, Morgan & Lawton, PA
201 E Pine St Ste 1200
PO Box 2928
Orlando, FL 32802-2928
(407) 422-4310
gbradford@drml-law.com
Attorney for City of Ocoee

Frank Mari
Bell & Roper, PA
2707 E Jefferson St
Orlando, FL 32803
(407) 897-5150
fmari@bellroperlaw.com
Attorney for Town of Windermere and Officer Griffin Hebel

Dated:  November 1, 2021
         Orlando, Florida

/s/ Jeremy K. Markman
JEREMY K. MARKMAN, Esquire
Florida Bar No.: 0080594
KING & MARKMAN, P.A.
941 Lake Baldwin Lane, Ste. 101
Orlando, Florida 32814
Tel:   (407) 447-0848

Fax: (407) 271-8999
markman@kingmarkman.com
cuwabera@kingmarkman.com
*Attorney for Plaintiff*


EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:_____/s/_____
     Andrew G. Celli, Jr.*
     Jonathan S. Abady*
     Earl S. Ward*
     Andrew K. Jondahl*

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
*Attorneys for Plaintiff*

\* *Admitted pro hac vice*